[No. 10694-2-III.   Division Three.   August 6, 1991.]

DAN POTTER, ET AL, *Petitioners,* v. WILBUR-ELLIS COMPANY, *Respondent.*

*John S. Moore* and *Velikanje, Moore & Shore,* for petitioners.

*Robert L. Parlette* and *Davis Arneil Law Firm,* for respondent.

MUNSON, J. — Dan and Debra Potter brought an action against Wilbur-Ellis Company, a retailer of pesticides. They appeal (1) the summary judgment dismissal of their negligence claims, (2) the summary judgment dismissal of their Consumer Protection Act (CPA), RCW 19.86.020, claim, and (3) the trial court's failure to find the disclaimer of warranties the Potters signed was unconscionable and unenforceable as a matter of law.

The facts, in the light most favorable to the Potters, are as follows:

The Potters own and operate a lawn care business in Wenatchee. In the spring of 1987, John Westerdahl, sales representative for Wilbur-Ellis, called on Dan Potter at his office and presented a sales talk about the use of the herbicide Tee Time. Mr. Potter maintains that Mr. Westerdahl stated Tee Time was a good herbicide for use on lawns, was presently being used on a golf course in Eastern Washington, Wilbur-Ellis was monitoring that use closely, and the herbicide was rendering good performance in the control of weeds in lawns. Mr. Potter had already begun using another herbicide for the spring of 1987 and did not purchase any Tee Time at that time.

During the 1987 season, Mr. Westerdahl continued to visit Mr. Potter and recommend the use of Tee Time. Another lawn care company in Yakima, Green Baron, purchased Tee Time from Wilbur-Ellis and began to apply it in the spring of 1987. Wilbur-Ellis learned later in 1987 that Green Baron had some root growth problems in some of the lawns, with resulting fading out and browning of the lawns. Mr. Westerdahl personally visited those lawns, but Green Baron made no claim against Wilbur-Ellis for the damage, and Mr. Westerdahl maintains that a county extension agent in touch with Green Baron had concluded another chemical was responsible for the damage.

The Potters ordered and applied a small amount of Tee Time in the fall of 1987. Mr. Westerdahl again visited Mr. Potter in the late winter or early spring of 1988. He again gave another Tee Time sales presentation saying, among other things, Tee Time would not harm lawns.

Relying on the statements of Mr. Westerdahl, the Potters purchased a large amount of Tee Time for the 1988 spring application. Mr. Potter maintains that at no time during any of his conversations with Mr. Westerdahl, or anyone else associated with Wilbur-Ellis, did they discuss or negotiate any disclaimer of warranties. Mr. Potter

signed an invoice upon delivery of most of the Tee Time which contained a disclaimer immediately above the signature line. The disclaimer read as follows:

It is agreed by the buyer that WILBUR-ELLIS CO. disclaims the implied warranties of merchantability and fitness for a particular purpose, and all liability for consequential damages and that these disclaimers have been bargained for. WILBUR-ELLIS CO. makes no express warranties beyond those which are on the label of the product sold. Buyer represents that he has fully complied with the licensing requirements for spray applicators in the state in which the product is used. Buyer agrees to pay      per cent per annum interest on past due accounts and attorney fees if turned over to attorney for collection.

The Potters applied Tee Time to approximately 900 lawns in the spring of 1988 in accordance with label directions. Most or all were damaged by the chemical. The Potters brought suit against Wilbur-Ellis to recover their damages.

On Wilbur-Ellis' summary judgment motion, the trial court granted a partial summary judgment of dismissal of all claims of negligence based on violation of RCW 15.58.150, violation of RCW 17.21.150, and common law, as well as the Potters' claim under the CPA. The trial court did not dismiss the Potters' claims based on express and implied warranties, including the Potters' contention that the disclaimer Mr. Potter signed was unconscionable, finding they presented genuine issues of material fact.

■■ In reviewing a summary judgment motion, the appellate court takes the same position as the trial court, considering all the evidence and reasonable inferences therefrom in the light most favorable to the nonmoving party. *Wilson v. Steinbach*, 98 Wn.2d 434, 437, 656 P.2d 1030 (1982). The moving party, in this instance Wilbur-Ellis, has the burden of proof by uncontroverted fact that no genuine issue of material fact exists. *Olympic Fish Prods., Inc. v. Lloyd*, 93 Wn.2d 596, 602, 611 P.2d 737 (1980).

The motion will be granted only if, after viewing the pleadings, depositions, admissions and affidavits and all reason-

able inferences that may be drawn therefrom in the light most favorable to the nonmoving party, it can be stated as a matter of law that (1) there is no genuine issue as to any material fact, (2) all reasonable persons could reach only one conclusion, and (3) the moving party is entitled to judgment.

*Olympic*, at 602.

### THE NEGLIGENCE CLAIMS

First, the Potters contend the trial court erred in dismissing their negligence claims based on a violation of RCW 15.58.150 which provides:

> **Unlawful practices.** (1) It is unlawful for any person to distribute within the state . . .
> (a) Any pesticide which has not been registered pursuant to the provisions of this chapter;

The parties agree Tee Time was not registered at the time the Potters purchased it from Wilbur-Ellis for the 1988 spring application.[1] The Potters argue this sale of an unregistered pesticide was evidence of negligence under RCW 5.40.050:

> **Breach of duty — Evidence of negligence — Negligence per se.** A breach of a duty imposed by statute, ordinance, or administrative rule shall not be considered negligence per se, but may be considered by the trier of fact as evidence of negligence . . ..

■ The trial court held that the violation of RCW 15.58.150 was not the proximate cause of the Potters' damages.

> The essential elements of actionable negligence are: (1) the existence of a duty owed to the complaining party; (2) a breach thereof; (3) a resulting injury; and (4) a proximate cause between the claimed breach and resulting injury.

*Pedroza v. Bryant*, 101 Wn.2d 226, 228, 677 P.2d 166 (1984).

The violation of RCW 15.58.150, distribution of the unregistered pesticide, shows that Wilbur-Ellis breached a legal duty. The Potters also show damage. However,

---

[1] The pesticide was registered in 1987 and while not registered at the time of sale, it was registered subsequently in 1988. Remedies for failure to register appear in RCW 15.58.260, none of which is at issue here.

"[f]or legal responsibility to attach to the negligent conduct, the claimed breach of duty must be a proximate cause of the resulting injury." *LaPlante v. State*, 85 Wn.2d 154, 159, 531 P.2d 299 (1975).

Proximate cause is usually a question of fact for the jury, but may be decided on summary judgment as a matter of law "if the facts are undisputed, the inferences are plain and inescapable, and reasonable minds could not differ." *Braegelmann v. Snohomish Cy.*, 53 Wn. App. 381, 384, 766 P.2d 1137, *review denied*, 112 Wn.2d 1020 (1989).

"Proximate cause consists of two elements: cause in fact and legal causation." *Braegelmann*, at 384. To satisfy the cause-in-fact element, the Potters must prove that "but for" the failure to register the pesticide, the damage would not have occurred. This is not the case. The trial court correctly dismissed the claim, which was based on RCW 15.58.150.

The Potters also contend Wilbur-Ellis violated the Washington Pesticide Application Act, RCW 17.21.150, by making misrepresentations about Tee Time and that those misrepresentations are a breach of duty which should support a cause of action under RCW 5.40.050.

RCW 17.21 sets forth various provisions, including licensing, recordkeeping, and certification requirements for commercial pesticide applicators. RCW 17.21.150 sets forth acts which are a violation of the chapter and provides in pertinent part:

> **Violation of chapter — What constitutes.** A person who has committed any of the following acts is declared to be in violation of this chapter:
> (1) Made false or fraudulent claims through any media, misrepresenting the effect of materials or methods to be utilized;

Thus, "the materials to be utilized" are those which the person is to apply as an applicator. The breach of a legal duty is admissible as evidence of negligence under RCW 5.40.050 only when the damage is caused by the very hazard against which the violated statute is

intended to protect. *Christen v. Lee*, 113 Wn.2d 479, 780 P.2d 1307 (1989). The damage here was caused by a retailer allegedly misrepresenting the possibility of harm from the product to a business-use purchaser. RCW 17.21.150 was, according to its chapter title, intended to protect individuals who contract to have the pesticides *applied* from misrepresentations by the applicator. It is inapplicable to the retailer who sells to an applicator.[2] The trial court correctly dismissed the claim which was based on RCW 17.21.150.

The Potters further contend Mr. Westerdahl's failure to inform them prior to the spring 1988 applications that damage had occurred to lawns on which Green Baron applied Tee Time was a breach of a duty. Further, they contend the omission was the cause of their damage since they would not have applied the chemical had they known of the damage Green Baron suffered.

This claim is more correctly a product liability action pursuant to RCW 7.72.040. Such an action may be brought against a product seller other than the manufacturer only if:

> the claimant's harm was proximately caused by:
> (a) The negligence of such product seller; or
> (b) Breach of an express warranty made by such product seller; or
> (c) The intentional misrepresentation of facts about the product by such product seller or the intentional concealment of information about the product by such product seller.

RCW 7.72.040(1).

An action will lie under subsections (1)(a) and (c) of the act if the Potters can show the failure to inform them of the lawn damage Green Baron experienced when applying the chemical was intentional concealment of information about the product.[3]

---

[2]It may arguably be a basis for a cause of action if sold to a consumer, but that question is not before this court and is not addressed.

[3]The Potters also have established a prima facie case based on the breach of an express warranty, subsection (1)(b), but that claim is not at issue here.

Mr. Westerdahl's deposition supports this contention Wilbur-Ellis knew that Green Baron used Tee Time on lawns in the spring of 1987, which had shown damage afterward. Mr. Westerdahl admits he personally went out to inspect those lawns.

Mr. Westerdahl's deposition indicates he had reason to believe something other than Tee Time caused the Green Baron damage.[4] His belief is based on hearsay as to what an extension agent concluded. Affidavits submitted in summary judgment proceedings must be based on personal knowledge. CR 56(e). Wilbur-Ellis has failed to sustain its burden of showing no genuine material factual disputes exist as to a cause of action under RCW 7.72.040(1)(a) and (c). The trial court erred in dismissing this cause of action.

## THE CPA CLAIMS

The trial court granted Wilbur-Ellis' motion to strike the Potters' claim based upon the CPA. The court indicated there was no unfair or deceptive act or practice which had the capacity to deceive a substantial portion of the public.

The elements of a private cause of action under the CPA are as follows: (1) an unfair or deceptive act or practice, (2) which occurred in trade or commerce, (3) affecting the public interest, (4) causing injury to business or property, and (5) is causally linked to the act and the injury suffered. *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 719 P.2d 531 (1986). Each of the above elements must be satisfied before a CPA claim will be sustained. *Hangman Ridge*, at 784-85.

---

[4]The deposition reads as follows:

"Q: [by plaintiff's attorney] Did you conclude what caused that damage that you saw?

"A: [Mr. Westerdahl] What was actually concluded, at that time Green Baron was in contact with an extension agent out of Yakima, Roy Vandenberg, and the conclusion that they came up with was that it was a product Trichlorpyr that caused the damage to the grass."

The Potters contend the sale of Tee Time by Wilbur-Ellis without revealing the Green Baron incident, as well as telling Mr. Potter the product would not harm lawns after the Green Baron incident, were deceptive and unfair acts.

Whether a particular act is unfair or deceptive is reviewable as a question of law. *Blake v. Federal Way Cycle Ctr.*, 40 Wn. App. 302, 309, 698 P.2d 578, *review denied*, 104 Wn.2d 1005 (1985). The statute does not define "unfair and deceptive"; the court must interpret the term.

> A buyer and seller do not deal from equal bargaining positions when the latter has within his knowledge a material fact which, if communicated to the buyer, will render the goods unacceptable or, at least, substantially less desirable. Failure to reveal a fact which the seller is in good faith bound to disclose may generally be classified as an unfair or deceptive act due to its inherent capacity to deceive and, in some cases, will even rise to the level of fraud.

*Testo v. Russ Dunmire Oldsmobile, Inc.*, 16 Wn. App. 39, 51, 554 P.2d 349, 83 A.L.R.3d 680 (1976).

The alleged conduct of Wilbur-Ellis' representative was unfair and deceptive under *Testo*. However, more recent judicial interpretations have held that in order for conduct to be "unfair" or deceptive it "must have a tendency or capacity to deceive a substantial portion of the public." *Blake*, at 310. The trial court relied upon this rule in dismissing the Potters' CPA claim, stating that the misrepresentation was made only to one person, Dan Potter.

A retailer has the capacity to aim a particular representation at any number of customers. Its misrepresentations are often heard only by one targeted customer, particularly in a sales presentation at the customer's place of business. Nonetheless, this sales presentation is not intended to make sales to only one customer. This conduct affects a multitude of customers, which in this case included Green Baron. Conduct need only have the *capacity* to deceive a substantial portion of the public, *Hangman Ridge*, at 785. A false statement which is

communicated to only one customer but which is contained in a standard form contract, sales materials, or routine sales presentation would have this capacity.[5] Mr. Potter contends the statement that Tee Time would not harm lawns was part of a second sales presentation the Wilbur-Ellis representative was making at the Potters' place of business. Thus, the statement had the capacity to deceive substantial portions of the consuming public as to this product. The trial court erred in dismissing the CPA claim.

### THE VALIDITY OF THE DISCLAIMER

Finally, the Potters contend the disclaimer is unconscionable as a matter of law and should not serve as an affirmative defense to their warranty claims because it does not set forth the qualities and characteristics being disclaimed with particularity and because it was not bargained for.

The Potters correctly note that whether a particular set of facts renders an agreement unconscionable is a question of law, not an issue of fact for the jury. *Rottinghaus v. Howell*, 35 Wn. App. 99, 104, 666 P.2d 889, *review denied*, 100 Wn.2d 1016 (1983).

Disclaimers are not favored in the law. *Hartwig Farms, Inc. v. Pacific Gamble Robinson Co.*, 28 Wn. App. 539, 542, 625 P.2d 171 (1981). "A disclaimer which is made after a sale is completed cannot be effective because it was not part of the bargain between the parties." *Hartwig*, at 543. Therefore, if the disclaimer here was not bargained for, it is, as a matter of law, unconscionable.

However, the facts of this transaction, to which the court must apply the law, are disputed. The disclaimer at issue expressly recites it was bargained for and was part of a form (presumably an invoice) used numerous times between the parties. However, the Potters contend the

---

[5]Similarly, communications which are part of a breach of good faith in insurance transactions have supported a CPA claim even where only one customer was involved. *See Evergreen Int'l, Inc. v. American Cas. Co.*, 52 Wn. App. 548, 761 P.2d 964 (1988).

disclaimer was not bargained for. This dispute raises a genuine issue of material fact to be submitted to a fact-finder. The trial court correctly ruled the issue must await trial. Furthermore, "the denial of a summary judgment motion is interlocutory and not an appealable ruling . . .". *Huston v. First Church of God*, 46 Wn. App. 740, 745, 732 P.2d 173, *review denied*, 108 Wn.2d 1018 (1987).

We affirm as to the disclaimer issues and the negligence causes of action arising from statutory violations; reverse as to the claim arising out of RCW 7.72.040 and those arising from the CPA; and remand for trial.

GREEN, C.J., and SHIELDS, J., concur.