[No. 17057-8-III. Division Three. July 30, 1998.]

JULIA K. HINER, *Appellant*, v. BRIDGESTONE/FIRESTONE, INC., *Respondent*.

*Michael E. Degrasse*, for appellant.

*Michael J. Myers* and *Michael L. Wolfe* of *Randall & Danskin, P.S.*, for respondent.

SCHULTHEIS, C.J. — Julia Hiner sued tire manufacturer Bridgestone/Firestone, Inc. for failing to imprint a warning on its snow tires that installation of such tires on only the front wheels of her car could cause poor handling. The trial court dismissed her consumer protection claim before trial and dismissed her products liability claim after she rested her case in chief. She contends on appeal that both claims should have gone to the jury. She also assigns error to the trial court's exclusion of an expert witness. We reverse and remand for trial.

## FACTS

Ms. Hiner owned a 1988 Hyundai front-wheel-drive car.

Some time in the winter of 1990-91, her father gave her two Bridgestone/Firestone (Bridgestone) studded snow tires he had stored in his garage. The record does not show when or from whom Mr. Hiner purchased the tires or when the studs were added, but it is undisputed that the tires were manufactured without studs in 1985. Ms. Hiner had them installed on her car and drove without incident that winter. In early January 1993, she took the two tires to a service station run by Louis Preso and asked him to install them. He placed them on the front wheels and left the original Goodyear radial tires on the rear. Ms. Hiner had not read the warning in the Hyundai owner's manual, which stated that "[s]now tires should be installed on all four wheels; otherwise, poor handling may result."

Two weeks later, on January 18, 1993, Ms. Hiner set out to drive from Walla Walla to Spokane. She called the State Patrol before leaving that morning and learned the roads were bare and dry with occasional patches of snow and ice. She encountered no difficulties until around 8:30 A.M., when the weather turned misty. As she neared the top of a winding grade, her car began to fishtail on an icy patch of road. She corrected by steering toward the spin, but began sliding toward an oncoming grain truck. When she hit her brakes, her car slid into the side of the truck, causing her serious injuries. She has not been able to return to her careers in nursing and modeling since the accident.

Ms. Hiner filed suit against Mr. Preso in June 1994 for personal injuries caused by his negligent installation of the studded tires on the front wheels of her front-wheel-drive vehicle and his negligent failure to warn her of the dangers of that configuration. She eventually settled that lawsuit and filed a summons and complaint against Bridgestone in June 1995. The complaint alleged strict liability under the Products Liability Act (PLA), RCW 7.72, and negligent failure to warn. Specifically, she claimed the studded tires were not reasonably safe when manufactured because Bridgestone did not affix a warning regarding their proper installation. Additionally, she claimed Bridgestone had a duty to

provide adequate warnings after the tires were manufactured. Ms. Hiner amended the complaint in December 1995, adding a claim for damages to her business and property pursuant to the Consumer Protection Act (CPA), RCW 19.86.[1]

Bridgestone raised several affirmative defenses in its answers to the original and amended complaints, including its allegation that Ms. Hiner's injuries were the fault of other entities, pursuant to RCW 4.22.070 and RCW 4.22.015. Both parties moved for summary judgment and Ms. Hiner moved to strike the affirmative defense regarding fault of other entities. By letter rulings, the trial court granted Ms. Hiner's motion to strike the "other entities" defense, denied Bridgestone's motion to dismiss the PLA claim and granted Bridgestone's motion to dismiss the CPA claim.

Trial proceeded on the PLA claim. Although Ms. Hiner originally sought admission of documents produced in 1988 that showed Bridgestone knew the dangers of improper installation of studded snow tires, she reserved entry of the documents until the testimony of expert witness William Nonnamaker. But Mr. Nonnamaker's deposition testimony was later excluded because the trial court found that he was not qualified to give an expert opinion on Bridgestone's knowledge of the danger at the time of manufacture or the need for a warning imprinted on the tire. Accident reconstruction expert Richard Cook testified that he had known since before 1984 the dangers of installing only two studded tires. In his opinion, the accident was caused by the fact that the "good aggressive" snow tires were installed on the front of the car, while the older Goodyear tires were left on the rear. He agreed on cross-examination, however, that putting the snow tires only on the front of the car did not conform to the recommendation found in the Hyundai owner's manual. A consultant to the gasoline

---

[1]The amended complaint also sought punitive damages under Ohio law (Bridgestone is an Ohio corporation) for reckless or wanton misconduct. That claim was dismissed in partial summary judgment and was not appealed.

service station industry testified that most gas dealers did not recognize that installing studded tires in this configuration could be a problem.

At the close of Ms. Hiner's case, Bridgestone moved for a directed verdict or a dismissal of her claims. The trial court found no duty to warn due to insufficient evidence that the tires were unreasonably unsafe at the time of manufacture. It also found that Ms. Hiner had not presented a prima facie case that the Bridgestone tires were a proximate cause of her injuries. Dismissal was granted. Ms. Hiner petitioned for direct review by the Washington Supreme Court. Bridgestone cross-appealed the dismissal of its entity liability affirmative defense. The Supreme Court transferred the cause to this court for review.

### Consumer Protection

Ms. Hiner first challenges the trial court's summary dismissal of her CPA claim. In a letter ruling, the trial court found that *Stevens v. Hyde Athletic Indus., Inc.*, 54 Wn. App. 366, 370, 773 P.2d 871 (1989), which holds that the CPA does not cover actions for personal injury, is directly on point and controlling on this issue. Ms. Hiner argues that she is seeking to recover for injury to her careers and to her vehicle, neither of which is characterized as a personal injury. Bridgestone disagrees and further contends Ms. Hiner did not perfect her appeal of the CPA claim dismissal.

■ We begin by noting that a party may wait until entry of final judgment to appeal prior orders. *Fox v. Sunmaster Prods., Inc.*, 115 Wn.2d 498, 504-05, 798 P.2d 808 (1990); RAP 2.4. Although Ms. Hiner neglected to mention in her notice of appeal the summary dismissal of her CPA claim, her appeal of the judgment necessarily included both the CPA and PLA claims. As the judgment reads, "Judgment as a matter of law dismissing Plaintiff's *claims* should be granted." (Emphasis added.) The judgment made final what was previously an interlocutory ruling. Consequently,

Ms. Hiner perfected her appeal of the dismissals of both her claims when she appealed the judgment.

■ An order to dismiss a suit for failure to state a claim upon which relief can be granted, CR 12(b)(6), is treated as a summary judgment. CR 12(c). We review a summary judgment order de novo, considering the evidence in the light most favorable to the nonmoving party. *CLEAN v. City of Spokane*, 133 Wn.2d 455, 462, 947 P.2d 1169 (1997), *pet. for cert. filed*, 66 U.S.L.W. 3750 (U.S. May 6, 1998) (No. 97-1807). Summary judgment is appropriate when the parties' pleadings and documents establish there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Id.* Here we examine whether Ms. Hiner alleged facts sufficient to establish compensable injuries under the CPA.

■ To prevail in a private CPA action under RCW 19.86.090, a plaintiff must establish five elements: (1) an unfair or deceptive act or practice (2) occurring in trade or commerce; (3) an impact on public interest; (4) an injury to the plaintiff in his or her business or property; and (5) causation. *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 780, 719 P.2d 531 (1986). Each of the elements must be satisfied before a CPA claim will be sustained. *Id.* at 793; *Potter v. Wilbur-Ellis Co.*, 62 Wn. App. 318, 326, 814 P.2d 670 (1991).

In this case, the second, third and fifth elements are easily met. Bridgestone's alleged failure to warn of known dangers in the foreseeable use of the tires clearly occurred in the conduct of trade. Further, if the failure to warn constitutes an unfair or deceptive act, it meets the public interest element because many consumers were likely affected by it. *Hangman Ridge*, 105 Wn.2d at 790. Ms. Hiner also presented evidence that if she had known of the dangers in mixing snow tires and conventional tires she would not have allowed the tires to be installed improperly, satisfying the causation element of a CPA claim. Ms. Hiner's failure to establish the first and fourth elements, however, is fatal.

■ The CPA does not define "unfair or deceptive act

or practice." While a plaintiff need not show that the act in question was intended to deceive, he or she must show that it had the capacity to deceive a substantial portion of the public. *Sing v. John L. Scott, Inc.*, 134 Wn.2d 24, 30, 948 P.2d 816 (1997); *Hangman Ridge*, 105 Wn.2d at 785-86. Implicit in the definition of "deceptive" is the understanding that the actor *misrepresented* something of material importance. *See, e.g., Potter*, 62 Wn. App. at 327 (failure to reveal a material fact known to the seller and that the seller in good faith is bound to disclose may be classified an unfair or deceptive act due to its inherent capacity to deceive). Whether particular actions are unfair or deceptive is reviewable as a question of law. *Id.* (citing *Blake v. Federal Way Cycle Ctr.*, 40 Wn. App. 302, 309, 698 P.2d 578, *review denied*, 104 Wn.2d 1005 (1985)). Failure to warn of inherent dangers in the use of a product is not a deceptive or unfair act unless the manufacturer or seller knows of the dangers and by failing to reveal them misrepresents the safety of the product. Ms. Hiner fails to establish such knowledge here. None of the documents before the trial court on the motion to dismiss and the response to the motion indicate that Bridgestone knew of the dangers when the tires were manufactured or sold.

■ Additionally, personal injuries are not recoverable under the CPA. *Washington State Physicians Ins. Exch. & Ass'n v. Fisons Corp.*, 122 Wn.2d 299, 318, 858 P.2d 1054 (1993). Ms. Hiner's amended complaint adding the CPA claim is entitled "Amended Complaint for Damages for Personal Injuries." These damages, including reimbursement for lost wages and earning capacity, medical expenses and damage to her car, arise from personal injuries and are commonly awarded in personal injury actions. *See, e.g., Powell v. Viking Ins. Co.*, 44 Wn. App. 495, 500-01, 722 P.2d 1343 (1986). They are not injuries to "business or property" as contemplated by the CPA. *Physicians Ins. Exch.*, 122 Wn.2d at 318; *Stevens*, 54 Wn. App. at 370.

PRODUCTS LIABILITY: FAILURE TO WARN

Ms. Hiner next contends the trial court erred in dismiss-

ing her products liability claim in a judgment as a matter of law, CR 50(a)(1). The court found no duty to warn because there was insufficient evidence the tires were not reasonably safe and further found insufficient evidence that the Bridgestone tires were the proximate cause of Ms. Hiner's injuries. Ms. Hiner argues that the court's ruling is contrary to Washington's law of products liability and misrepresents her theory of recovery.

 A motion for judgment as a matter of law is properly granted when, viewing the evidence in the light most favorable to the nonmoving party, the court can say there is no substantial evidence or reasonable inference to support a verdict for the nonmoving party. *Sing*, 134 Wn.2d at 29. "The motion should be granted only if the court can say, as a matter of law, that no reasonable person could have found in favor of the nonmoving party." *Ayers v. Johnson & Johnson Baby Prods. Co.*, 117 Wn.2d 747, 753, 818 P.2d 1337 (1991) (judgment notwithstanding the verdict). We apply the same standard when we review the decision of the trial court. *Hollmann v. Corcoran*, 89 Wn. App. 323, 331, 949 P.2d 386 (1997).

Under the PLA, a product manufacturer is liable if a claimant is harmed by a product that is "not reasonably safe because adequate warnings or instructions were not provided." RCW 7.72.030(1). A product is not reasonably safe if

> at the time of manufacture, the likelihood that the product would cause the claimant's harm or similar harms, and the seriousness of those harms, rendered the warnings or instructions of the manufacturer inadequate and the manufacturer could have provided the warnings or instructions which the claimant alleges would have been adequate.

RCW 7.72.030(1)(b). Further, a product is not reasonably safe if it is more dangerous than an ordinary consumer would reasonably expect. RCW 7.72.030(3); *Estate of Ryder v. Kelly-Springfield Tire Co.*, 91 Wn.2d 111, 118, 587 P.2d 160, 16 A.L.R.4TH 129 (1978). Whether warnings are

required is generally a question of fact for the jury. *Id.* at 115-16, 119.

The focus in a products liability action is on the product at the time of manufacture, not on culpable acts of the manufacturer. *Hyjek v. Anthony Indus.*, 133 Wn.2d 414, 422, 427, 944 P.2d 1036 (1997). A claim based on the "failure to warn" subsection of the PLA, RCW 7.72.030(1)(b) (hereafter subsection (b)), is one of strict liability; consequently, the foreseeability of the harm is not an element. *Ayers*, 117 Wn.2d at 761, 764. The court must employ a balancing test for subsection (b) claims, balancing the likelihood that the product would cause the harm alleged, and the seriousness of that harm, against the burden on the manufacturer to provide an adequate warning. *Id.* at 765. The likelihood that an event will occur depends not on what a reasonable person would anticipate under the circumstances, but on an assessment of all relevant facts, including even those available only in hindsight. *Id.* at 764. Once the product is found to be not reasonably safe due to inadequate warnings, the manufacturer is liable for the injuries proximately caused by the inadequate warnings. *Id.* at 763.

The trial court found that Ms. Hiner presented insufficient evidence that the snow tires were unreasonably unsafe when manufactured. As a result, the court found Bridgestone had no duty to warn. These statements appear to misrepresent the test for PLA liability. Even products faultlessly designed and manufactured may not be reasonably safe due to inadequate warnings. *Anderson v. Dreis & Krump Mfg. Corp.*, 48 Wn. App. 432, 438, 739 P.2d 1177, *review denied*, 109 Wn.2d 1006 (1987). The relevant question is whether the safety of the snow tires required a warning that mixing them with ordinary tires could be dangerous. Ms. Hiner presented testimony that the tires were manufactured with predrilled holes for the installation of studs. The inference is that they are ordinarily used as

studded snow tires.[2] Applying the balancing test of subsection (b), we note that questions of fact remain concerning the likelihood that the tires would cause this serious accident. Ms. Hiner presented testimony that most gas dealers did not know that mixing tire types could create problems in traction and handling. Accordingly, a reasonable person could find that installation of the tires with nonsnow tires, and the subsequent results on icy roads, are both somewhat likely. That balanced with the arguable ease in imprinting a warning on the tire could support a reasonable juror's decision that Bridgestone failed to provide adequate warnings.

But failure to provide necessary warnings is not enough to trigger liability under the PLA. Ms. Hiner must also present evidence that the lack of a warning proximately caused her injuries. *Anderson v. Weslo, Inc.*, 79 Wn. App. 829, 838, 906 P.2d 336 (1995). Proximate cause may be decided as a matter of law when no reasonable person would differ. *Id.* The plaintiff must establish both aspects of proximate cause: (1) cause in fact, the "but for" aspect connecting the act and the injury; and (2) legal cause, a determination of whether policy, logic and common sense support liability. *Id.* (citing *Ayers*, 117 Wn.2d at 753, 756).

Bridgestone contends Ms. Hiner failed to establish cause in fact. In particular, it argues that since she did not read the instructions in her owner's manual about putting snow tires on all four wheels, she would not have read a warning imprinted on her tires. She conceded she had never read the information already imprinted on the tires. To uphold the trial court's judgment as a matter of law, this court would have to conclude that no reasonable person could infer that a warning would have prevented Ms. Hiner's accident. *Id.* at 755. We find that a reasonable juror could agree with Ms. Hiner that a warning imprinted on the tire would be the most efficacious method of informing any-

---

[2]The fact that the tires were designed to be used either with or without studs distinguishes this case from those where a product is substantially changed after manufacture, barring recovery under the PLA. *See, e.g., Parkins v. Van Doren Sales, Inc.*, 45 Wn. App. 19, 28, 724 P.2d 389 (1986).

one who actually mounts the tires. Ms. Hiner may not have read the warning, but the person she hired to do the work for her might have.

The determination of legal cause requires us to ask whether Bridgestone should be liable as a matter of law for the injuries caused by the lack of a warning on its snow tires. *Ayers*, 117 Wn.2d at 756; *Hartley v. State*, 103 Wn.2d 768, 779, 698 P.2d 77 (1985). In *Ayers*, the Supreme Court asked whether logic, common sense, justice or policy supported holding a baby oil manufacturer liable for a baby's injuries caused by aspiration of the oil. 117 Wn.2d at 756-58. The parents argued that if the bottle had contained a warning about aspirating its contents, they would have safely locked the bottle away. The court held that because the product is specifically designed for babies, the manufacturer may be liable for injuries to babies proximately caused by its failure to warn. *Id.* at 758-59. It is at least arguable in the present case that because Bridgestone manufactured and marketed its tires for use on icy roads, it should be responsible for warning about an ordinary use of the tires (on only two wheels) that could make them extremely dangerous under winter conditions.

Considering the evidence in the light most favorable to Ms. Hiner, we find that she sufficiently supports each element of a claim based on subsection (b). We cannot say that no reasonable juror could find in her favor. *Id.* at 753. Accordingly, we reverse the dismissal of her PLA claim.

EXPERT TESTIMONY

Finally, Ms. Hiner contends the trial court abused its discretion when it excluded the expert testimony of Mr. Nonnamaker. She argues his testimony was necessary to establish the hazards of mismatching studded and unstudded tires and that the tire industry knew of the hazards before the tires were manufactured.

Expert testimony on scientific, technical or specialized knowledge is admissible under ER 702 if it will as-

sist the trier of fact to understand the evidence or a fact in issue. *Queen City Farms, Inc. v. Central Nat'l Ins. Co.*, 126 Wn.2d 50, 102, 882 P.2d 703 (1994), 891 P.2d 718 (1995). Admission of expert testimony is within the broad discretion of the trial court, which decides whether the witness qualifies as an expert and whether the testimony would be helpful. *Id.* (quoting 5A KARL B. TEGLAND, WASHINGTON PRACTICE: EVIDENCE § 288, at 380 (3d ed. 1989)); *Wlasiuk v. Whirlpool Corp.*, 81 Wn. App. 163, 180, 914 P.2d 102, 932 P.2d 1266 (1996).

Mr. Nonnamaker, a professional Ohio "tire consultant," worked in research and development at Firestone (the predecessor of Bridgestone/Firestone) until 1956 and worked as a manager in tire engineering until 1973, when he formed a firm specializing in consultation with lawyers. The trial court found that Mr. Nonnamaker did not have the training, knowledge or background to give opinions on the issues: specifically, whether the tires should have a warning and whether Bridgestone knew of the dangers at the time of manufacture. Because another expert, accident reconstructionist Richard Cook, had already testified that the configuration of the tires caused the accident, the court found Mr. Nonnamaker's testimony unnecessary on that issue. Additionally, he was not working in the industry when the tires in question were manufactured, he admitted he was not an expert in "warnings," and he also admitted he had never studied engineering. On the basis of three exhibits[3] showing that in 1988 Bridgestone warned against installing the studded tires only on the front wheels of front-wheel-drive cars, Mr. Nonnamaker testified in his deposition that Bridgestone must have known about the dangers in 1985, when the tires were manufactured. When an expert's opinion is based on theoretical speculation and strays beyond his or her area of expertise, it is properly excluded. *Queen City*, 126 Wn.2d at 102-03. Further, lay persons could have examined the exhibits and reached their

---

[3]These exhibits were never offered as evidence after Mr. Nonnamaker was excluded.

own opinions about Bridgestone's knowledge, without the need for technical assistance.

On balance, we find that the trial court did not abuse its discretion in excluding Mr. Nonnamaker's deposition testimony. Ms. Hiner never actually offered the three exhibits regarding Bridgestone's knowledge in 1988 of the problems with installing studded with unstudded tires. Consequently, her argument that the court improperly refused admittance of the exhibits is without merit.

### ENTITY LIABILITY

Bridgestone cross-appeals the trial court's dismissal of its affirmative defense of entity liability under RCW 4.22.070(1) and 4.22.015. It contends liability for Ms. Hiner's injuries is shared by Mr. Preso (who installed the tires), the manufacturer of the worn Goodyear tires, Mr. Hiner (who gave his daughter the tires), and Hyundai, whose owner's manual gave inadequate warnings about installation of snow tires.

With a PLA claim, liability may be joint and several for all entities at "fault." RCW 4.22.070, .015; *Falk v. Keene Corp.*, 113 Wn.2d 645, 654, 782 P.2d 974 (1989); *Lundberg v. All-Pure Chem. Co.*, 55 Wn. App. 181, 186, 777 P.2d 15, *review denied*, 113 Wn.2d 1030 (1989). Fault is defined in part as acts or omissions "that subject a person to strict tort liability or liability on a product liability claim." RCW 4.22.015. Only manufacturers and product sellers are subject to liability under the strict liability failure-to-warn claim raised by Ms. Hiner. RCW 7.72.030, .040. A product seller is any person or entity engaged in the business of selling or leasing the product in question. RCW 7.72.010(1); *Buttelo v. S.A. Woods-Yates Am. Mach. Co.*, 72 Wn. App. 397, 401, 405, 864 P.2d 948 (1993). In the case before us, only Bridgestone qualifies as a manufacturer or seller of its tires. Mr. Preso, who installed the tires, was not in the business of selling them. The trial court properly dismissed

Bridgestone's affirmative defense of entity liability as inapplicable to the PLA failure to warn claim.

ATTORNEY FEES

Ms. Hiner requests reasonable attorney fees and expenses on review pursuant to RAP 18.1. *Mason v. Mortgage Am., Inc.*, 114 Wn.2d 842, 855-56, 792 P.2d 142 (1990); *Keyes v. Bollinger*, 31 Wn. App. 286, 298, 640 P.2d 1077 (1982). Only the CPA claim would allow attorney fees for a successful appeal. *Mason*, 114 Wn.2d at 856; *Stolz v. McKowen*, 14 Wn. App. 808, 813, 545 P.2d 584 (1976). Because we affirm the dismissal of Ms. Hiner's CPA claim, she is not entitled to fees and costs on appeal.

CONCLUSION

Although we agree with the trial court that Ms. Hiner fails to establish a compensable claim under the CPA, we find that she adequately presents the requisite elements of a products liability action. On that basis alone, we reverse the summary dismissal of the PLA claim and remand for trial.

Reversed and remanded.

SWEENEY and KATO, JJ., concur.

Review granted at 137 Wn.2d 1013 (1999).