IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | | |
|---|---|---|
| ANDREAS KISCHEL, individually, | ) | No. 77975-3-I |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| PUBLIC STORAGE, | ) | |
| | ) | |
| Respondent. | ) | FILED: June 3, 2019 |

SCHINDLER, J. — Andreas Kischel filed a complaint against Public Storage for declaratory judgment and violation of the Consumer Protection Act (CPA), chapter 19.86 RCW. Kischel appeals summary judgment dismissal of the lawsuit. Kischel contends the court erred in ruling the Public Storage advertisements were not an unfair or deceptive act or practice under the CPA and denying his request for a declaratory judgment. We affirm.

FACTS

On November 2, 2014, Andreas Kischel executed a "Lease/Rental Agreement" with Public Storage to rent storage space at the Bellevue facility located at 13105 SE 30th Street. The term of the Lease/Rental Agreement was month-to-month "until terminated." Kischel initialed and acknowledged he "has read" and "understands and

agrees to" a number of provisions in the Lease/Rental Agreement, including limitation of "Owner's" liability:

> LIMITATION OF OWNER'S LIABILITY: INDEMNITY. **Owner and Owner's Agents will have no responsibility to Occupant or to any other person for any loss, liability, claim, expense, damage to property or injury to persons ("Loss") from any cause, including without limitation, Owner's and Owner's Agents['] active or passive acts, omissions, negligence or conversion, unless the Loss is directly caused by Owner's fraud, willful injury or willful violation of law. Occupant shall indemnify and hold Owner and Owner's Agents harmless from any loss incurred by Owner and Owner's Agents in any way arising out of Occupant's use of the Premises or the Property including, but not limited to, claims of injury or loss by Occupant's visitors or invitees. Occupant agrees that Owner's and Owner's Agents' total responsibility for any Loss from any cause whatsoever will not exceed a total of $5,000.**[1]

The Lease/Rental Agreement expressly states Public Storage "disclaims any implied or express warranties, guarantees or representations of the . . . safety or security of the Premises and the Property."[2]

> NO WARRANTIES: ENTIRE AGREEMENT. **Owner hereby disclaims any implied or express warranties, guarantees, or representations of the nature, condition, safety or security of the Premises and the Property and Occupant hereby acknowledges that Occupant has inspected the Premises and the Property and hereby acknowledges and agrees that Owner does not represent or guarantee the safety or security of the Premises or the Property or of any personal property stored therein, and this Lease/Rental Agreement does not create any contractual obligation for Owner to increase or maintain such safety or security.**[3]

After signing the lease on November 2, 2014, Kischel moved personal articles into the storage unit with the help of his friend Valeriy Sakk. Kischel used a combination lock to secure entry to the storage unit.

---

[1] Boldface in original.

[2] Boldface omitted.

[3] Boldface in original.

2

Almost a year later on October 5, 2015, Kischel and Sakk returned to the Public Storage facility to retrieve the items from the storage unit. The lock on the storage unit had been replaced with a "Public Storage" lock. The Lease/Rental Agreement states that "in the event of suspected criminal activity" or "an emergency," the Owner's Agent has "the right, but not the obligation, to remove Occupant's locks and enter the Premises" for purposes of taking such "action as may be necessary and appropriate to preserve the Premises."

The Public Storage employee told Kischel he could wait for the district manager to open the lock to the storage unit or remove the lock in the presence of a Public Storage employee. Kischel called a friend to remove the lock in the presence of a Public Storage employee. When Kischel went into the storage unit, he "noticed that some of my articles had been ransacked and items were missing." Kischel estimated the "approximate market value of my stolen articles" was "about $1,500."

On October 11, 2015, Kischel terminated the Lease/Rental Agreement.

On May 15, 2017, Kischel filed a "Complaint for Declaratory Judgment." Kischel sought a declaratory judgment on the obligation of Public Storage, his rights as a user of a Public Storage facility, and validity of the terms of the Lease/Rental Agreement that limited the liability of Public Storage. Kischel alleged Public Storage had an obligation to refund rental fees and should pay "the estimated amount of $1,800" for the stolen items.

On June 14, Public Storage filed an answer to the complaint. Public Storage denied the allegations. Public Storage asserted a number of affirmative defenses,

3

including the lawsuit did not state a claim upon which relief may be granted and the express terms of the Lease/Rental Agreement barred the claims.

On November 6, the court granted Kischel's motion to amend the complaint to add a cause of action alleging Public Storage violated the Consumer Protection Act (CPA), chapter 19.86 RCW.

Kischel filed the amended complaint on November 15. The amended complaint alleged the Public Storage advertisements were unfair and deceptive. Kischel alleged he "reasonably assumed and relied on defendant's representation that defendant's storage facility was secured from theft and intruders." Kischel cites Internet advertisements that state, " 'Public Storage is a respected and trusted operator of self-storage facilities,' " " 'Our Facilities are clean and well-lit,' " " '[Y]ou'll get a personalized entry code for the electronic security gate,' " and " 'You'll find property managers at each location who are self-storage experts.' " Kischel alleged Public Storage had a duty to provide notice that "the storage facility was in fact not secure and open to theft."

The amended complaint attached as an exhibit records produced by the Bellevue Police Department in response to a Public Records Act, chapter 42.56 RCW, request. The records reflect 243 reports of "theft or loss of property" in the previous five years at the seven Public Storage locations in Bellevue, including 31 reports of "theft or loss of property" in the previous five years at the Public Storage location in Bellevue where Kischel rented a storage unit.

On November 17, two days after Kischel filed the amended complaint, Public Storage filed a motion for summary judgment dismissal of the lawsuit. Public Storage noted the hearing on the motion for summary judgment for December 15.

4

Public Storage argued as a matter of law Kischel was not entitled to a declaratory judgment and the advertisements did not violate the CPA.

In support of the motion, Public Storage submitted the declaration of regional manager JC Reed, the Lease/Rental Agreement Kischel signed, and the ledger for Kischel's storage unit. Reed described the specific security features at the Bellevue storage facility in 2014 and 2015, including a daily lock check, individual customer gate codes for secure access to the facility, a CCTV[4] system to monitor access, and an on-site resident property manager. Reed states Public Storage "cannot and does not guarantee that a theft may never occur at a Public Storage facility."

On December 4, Kischel filed a response to the summary judgment motion. Kischel argued he was entitled to a declaratory judgment and there were disputed material issues of fact, including "Defendant's deliberate non-disclosure to Plaintiff of numerous documented instances of burglary and theft" and whether Public Storage denied Kischel access to his unit.[5] Kischel asserted the Public Storage advertisements were unfair and deceptive, affecting the public interest. Kischel cites the following Internet advertisements:

Why We're Number One
- Over 1 million people trust their things to Public Storage
- Our facilities are clean and well-lit
- You keep the only key to your unit
- We offer climate controlled units
- We give you 7 days a week access
- We offer a wide variety of sizes and features.[6]

---

[4] Closed-circuit television.

[5] Emphasis in original; boldface omitted.

[6] Boldface omitted.

Kischel alleged:

[T]he website extolls the virtues of Defendant's company over others in the market by claiming that:

> "Public Storage is the leading provider of storage units for your personal, business and vehicle needs with thousands of locations nationwide."
> "Once you move in, you keep the only key to your self-storage unit, which you can access on your schedule."
> "On your first day, you'll get a personalized entry code for the electronic security gate. You'll then be free to come and go anytime during Gate Hours."
> "You'll find property managers at each location who are self-storage experts."[7]

Kischel and Valeriy Sakk filed declarations in opposition to summary judgment. Sakk stated that on October 5, 2015, Kischel's combination lock had been replaced with a Public Storage lock and when Kischel opened the door to the storage unit, "we both noticed that it was not packed to the limits the way we left it originally one year ago."

Kischel states he "fully relied on the defendant's representation that defendant's storage facility was secured from theft and intruders."

> Based on advertisement, that people trust Defendant's expertise, that Defendant was best storage solution, that Defendant was respected and had successful history of storage operations, Defendant's storage facility had an on-site manager, I had formed an opinion that Defendant's storage facility was safe for my storage needs and I fully relied on the defendant's representation that defendant's storage facility was secured from theft and intruders.

Kischel cites the following representations:

> I looked up on [the] [I]nternet and found Public Storage units advertised in Bellevue, Washington.
> . . . Public Storage advertised itself as: "trusted, with expertise, providing best storage solution, largest self-storage company in the world, long and successful history, leadership position in the self-storage industry,

---

[7] Emphasis in original; boldface omitted.

6

respected and trusted, a member of the S&P[8] 500 and FT[9] Global 500, Number One, clean and well-lit facilities, customer keeps the only key to his or her unit, 7 days a week access to storage units, leading provider of storage units, personalized entry code for electronic security gate, on-site property managers who are self-storage experts."

Kischel states, "I would not have entered into any contract with Public Storage had it informed me that its storage facility was in fact not secure, readily open to theft and that it had history of theft and burglary."

Kischel filed a "Notice" to take judicial notice of the Bellevue Police Department records attached to the amended complaint. In response, Public Storage stipulated:

> [F]or the purposes of summary judgment only, the court can take judicial notice that:
> During a five year period, there were as many as 243 reported incidents of potential theft and/or burglary occurring at all of Public Storage's facilities within Bellevue, WA.[10]

However, Public Storage objected to "the court taking notice that any alleged thefts or burglaries in fact occurred, or the exact facts or circumstances surrounding any alleged thefts or burglaries."

The court granted the motion to dismiss the lawsuit on summary judgment. The court entered an "Order Granting Defendant's Motion for Summary Judgment."

The order states that even assuming for purposes of summary judgment that the reported Public Storage thefts are true, Kischel could not prove a CPA violation. The court concluded as a matter of law that the Public Storage advertisements were not unfair or deceptive and did not have the capacity to deceive the public.

> The Defendant's advertising claims, as recounted in the Plaintiff's declaration, cannot reasonably be interpreted as being false, or as

---

[8] Standard and Poor's.

[9] Financial Times.

[10] Emphasis in original; boldface omitted.

justifying consumers in concluding that there have been no thefts at the Defendant's storage facility. The Plaintiff's assertions do not justify an inference that the Defendant has undertaken to guarantee the security of its storage facility.

The court concluded Kischel was not entitled to a declaratory judgment because the Lease/Rental Agreement "is no longer in effect."

> The court agrees with the Defendant that it would be inappropriate for the court to make a declaratory ruling with respect to this claim. The parties' Lease/Rental Agreement is no longer in effect, and so there is no reason to bring a claim with respect to that contract pursuant to the Declaratory Judgments Act, Chap[ter] 7.24 RCW.

The court concluded that "to the extent that the Plaintiff believes that the Defendant has caused the Plaintiff to sustain monetary harm based on the chronology of the Lease/Rental Agreement, the Plaintiff's proper remedy is to bring a claim for damages."

## ANALYSIS

### Consumer Protection Act

Preliminarily, Kischel contends the court erred by denying his motion to deem the CPA allegations in the amended complaint admissions under CR 8(d).

For the first time at the summary judgment hearing on December 15, Kischel argued that because Public Storage did not file an answer to the amended complaint, the CPA allegations should be deemed admitted under the civil rules. Public Storage argued, "[T]here is no pending motion before the court." Public Storage asserted Kischel filed the amended complaint on November 15 and it had 10 days to file an answer to the amended complaint, but instead filed a motion for summary judgment dismissal. Public Storage argued the summary judgment motion explicitly denied the CPA allegation.

8

The court ruled, "I agree with defense . . . , but that is not an issue before me." We decline to consider an argument that the party did not properly raise below. Hikel v. City of Lynnwood, 197 Wn. App. 366, 378, 389 P.3d 677 (2016). We also note the record establishes Kischel did not comply with the notice requirements of the Civil Rules, resulting in no time for Public Storage to prepare for the motion or submit case authority. See Goucher v. J.R. Simplot Co., 104 Wn.2d 662, 665, 709 P.2d 774 (1985).

Kischel contends the court erred in concluding the Public Storage advertisements are not unfair and deceptive in violation of the CPA.

We review summary judgment de novo. Hearst Commc'ns, Inc. v. Seattle Times Co., 154 Wn.2d 493, 501, 115 P.3d 262 (2005). Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c).

To prevail on the CPA claim, Kischel must establish each of the following elements: "(1) [U]nfair or deceptive act or practice; (2) occurring in trade or commerce; (3) public interest impact; (4) injury to plaintiff in his or her business or property; [and] (5) causation." Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co., 105 Wn.2d 778, 780, 719 P.2d 531 (1986); Guijosa v. Wal-Mart Stores, Inc., 144 Wn.2d 907, 917, 32 P.3d 250 (2001). The failure to establish any of the elements is fatal to a CPA claim. Hangman Ridge, 105 Wn.2d at 793.

Kischel argues the failure of Public Storage to disclose instances of burglary or theft is an unfair or deceptive practice under the CPA.

The CPA prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." RCW 19.86.020. A party can

9

establish an unfair or deceptive act in one of three ways: (1) Per se unfair or deceptive conduct, Klem v. Washington Mutual Bank, 176 Wn.2d 771, 785, 295 P.3d 1179 (2013); (2) an act that has the capacity to deceive a substantial portion of the public, Hangman Ridge, 105 Wn.2d at 785-86; Behnke v. Ahrens, 172 Wn. App. 281, 290, 294 P.3d 729 (2012); or (3) an unfair or deceptive act or practice not regulated by statute but in violation of the public interest, Klem, 176 Wn.2d at 787; Panag v. Farmers Insurance Co. of Washington, 166 Wn.2d 27, 37 n.3, 204 P.3d 885 (2009). A plaintiff does not need to show that the act intended to deceive, "only that it had the capacity to deceive a substantial portion of the public." Panag, 166 Wn.2d at 47. "Deception exists 'if there is a representation, omission or practice that is likely to mislead' a reasonable consumer." Panag, 166 Wn.2d at 50 (quoting Sw. Sunsites, Inc. v. Fed. Trade Comm'n, 785 F.2d 1431, 1435 (9th Cir. 1986)); Rush v. Blackburn, 190 Wn. App. 945, 963, 361 P.3d 217 (2015).

The CPA does not define "deceptive," but "the implicit understanding is that 'the actor misrepresented something of material importance.' " State v. Kaiser, 161 Wn. App. 705, 719, 254 P.3d 850 (2011)[11] (quoting Hiner v. Bridgestone/Firestone, Inc., 91 Wn. App. 722, 730, 959 P.2d 1158 (1998), rev'd in part on other grounds, 138 Wn.2d 248, 978 P.2d 505 (1999)). We measure a deceptive act or practice by " the 'net impression' " on a reasonable consumer. Panag, 166 Wn.2d at 50 (quoting Fed. Trade Comm'n v. Cyberspace.com LLC, 453 F.3d 1196, 1200 (9th Cir. 2006)).

Where, as here, there is no factual dispute about the content of the advertisements, whether the advertisements constitute "an unfair or deceptive act" is a

---

[11] Emphasis in original.

question of law we decide de novo. <u>Leingang v. Pierce County Med. Bureau, Inc.</u>, 131 Wn.2d 133, 150, 930 P.2d 288 (1997); <u>Panag</u>, 166 Wn.2d at 47.

Kischel asserts the advertisements misrepresent the safety and security of the Public Storage facility by failing to disclose thefts or burglaries that have occurred. Kischel claims the Public Storage advertisements led him to believe the storage facility was absolutely secure from theft. Kischel cites the statements in the advertisements that Public Storage " 'provide[s] the best storage solution' " and is " 'respected and trusted.' " Neither of these statements is misleading or deceptive. Kischel also cites statements in the advertisements that he claims could lead a consumer to believe Public Storage provides a secure storage facility protected from theft:

-Daily Lock Check Completed by Property or Relief Manager
-Individual Customer Gate Code Providing Secure Access to the Facility
-CCTV System to Monitor Access
-On-Site Resident property Manager.

But unlike in <u>Eifler v. Shurgard Capital Management Corp.</u>, 71 Wn. App. 684, 696-97, 861 P.2d 1071 (1993), the uncontroverted testimony of JC Reed establishes that the statements in the Public Storage advertisements are accurate. We also note the Lease/Rental Agreement unequivocally states:

**Owner does not represent or guarantee the safety or security of the Premises or the Property or of any personal property stored therein, and this Lease/Rental Agreement does not create any contractual obligation for Owner to increase or maintain such safety or security.**[12]

We conclude the Public Storage advertisements do not constitute an unfair or deceptive act or practice in violation of the CPA.

---

[12] Boldface in original.

11

Request for Declaratory Judgment

Kischel contends the court erred in dismissing his declaratory judgment action. In the "First Cause of Action—Declaratory Judgment," Kischel asserts, "A justiciable controversy exists between Plaintiff and Defendant regarding Public Storage obligation to Plaintiff with relation to assuring secure storage facility as represented and advertised to Plaintiff." The "Second Cause of Action—Declaratory Judgment," states, "A justiciable controversy exists between Plaintiff and Defendant as to Plaintiff's rights as a user of PUBLIC STORAGE facility and plaintiff's reliance that such facility would allow plaintiff [a] secure and theft-free storage unit." The "Third Cause of Action—Declaratory Judgment," states, "A justiciable controversy exists between Plaintiff and Defendant regarding Public Storage obligation to allow Plaintiff immediate access to his storage unit, replacing plaintiff's lock and interference with plaintiff's access to his unit." The "Fourth Cause of Action—Declaratory Judgment," states:

> A justiciable controversy exists between Plaintiff and Defendant regarding Public Storage's liability to Plaintiff based on defendant's failure to disclose, properly inform and/or notify plaintiff that [the] Public Storage facility was in fact un-secure to theft, so that Plaintiff could make [an] informed decision whether to use such defendant's un-secure storage facility.

And the "Fifth Cause of Action—Declaratory Judgment," states:

> A justiciable controversy exists between Plaintiff and Defendant with relation to validity of the Lease/Rental Agreement, Section 7. LIMITATION OF OWNER'S LIABILITY; INDEMNITY CLAUSE. Plaintiff requests this court to make [a] determination of validity of such clause per RCW 4.24.115.[13]

---

[13] RCW 4.24.115 addresses the "[v]alidity of agreement to indemnify against liability for negligence relative to construction, alteration, improvement, etc., of structure or improvement attached to real estate or relative to a motor carrier transportation contract."

Kischel contends he was entitled to a declaratory judgment under the Uniform Declaratory Judgments Act (UDJA), chapter 7.24 RCW. We review a trial court's decision on a request for a declaratory judgment for abuse of discretion. Nollette v. Christianson, 115 Wn.2d 594, 600, 800 P.2d 359 (1990). A court abuses its discretion when it bases the decision on untenable grounds, for untenable reasons, or the decision is manifestly unreasonable. Mayer v. Sto Indus., Inc., 156 Wn.2d 677, 684, 132 P.3d 115 (2006).

Under the UDJA, the court has the power to "declare rights, status and other legal relations." RCW 7.24.010. The UDJA provides, in pertinent part:

> A person . . . whose rights, status or other legal relations are affected by a statute, . . . may have determined any question of construction or validity arising under the . . . statute . . . and obtain a declaration of rights, status or other legal relations thereunder.

RCW 7.24.020.

The court did not abuse its discretion in concluding Kischel was not entitled to a declaratory judgment because there was no justiciable controversy. In Diversified Industries Development Corp. v. Ripley, 82 Wn.2d 811, 814-15, 514 P.2d 137 (1973),[14] the Washington Supreme Court held that in order to obtain a declaratory judgment under the UDJA, there must be a justiciable controversy:

> This court, in applying the [UDJA], has, in the absence of the intrusion of issues of broad overriding public import, steadfastly adhered to the virtually universal rule that, before the jurisdiction of a court may be invoked under the act, there must be a justiciable controversy.

The court defined a "justiciable controversy" as follows:

> (1) . . . [A]n actual, present and existing dispute, or the mature seeds of one, as distinguished from a possible, dormant, hypothetical, speculative,

---

[14] Footnote omitted.

or moot disagreement, (2) between parties having genuine and opposing interests, (3) which involves interests that must be direct and substantial, rather than potential, theoretical, abstract or academic, and (4) a judicial determination of which will be final and conclusive.

Diversified Indus., 82 Wn.2d at 815.

Inherent in these four requirements are the traditional limiting doctrines of standing, mootness, and ripeness, as well as the federal case-or-controversy requirement. In sum, the four justiciability factors must "coalesce" to ensure that the court will be rendering a final judgment on an actual dispute between opposing parties with a genuine stake in the resolution.

To-Ro Trade Shows v. Collins, 144 Wn.2d 403, 411, 27 P.3d 1149 (2001)[15] (quoting Diversified Indus., 82 Wn.2d at 815).

Because the court dismissed the CPA claim as a matter of law, the court did not abuse its discretion in concluding there was no justiciable controversy. The court also concluded the undisputed record shows Kischel terminated the Lease/Rental Agreement approximately 19 months before he filed the Complaint for Declaratory Judgment. However, "to the extent that the Plaintiff believes that the Defendant has caused the Plaintiff to sustain monetary harm based on the chronology of the Lease/Rental Agreement, the Plaintiff's proper remedy is to bring a claim for damages."

Kischel cites CR 57 to argue the existence of another adequate remedy does not preclude a declaratory judgment. CR 57 states, "The existence of another adequate remedy does not preclude a judgment for declaratory relief in cases where it is appropriate." See Ronken v. Bd. of County Comm'rs of Snohomish County, 89 Wn.2d 304, 310, 572 P.2d 1 (1977). But as noted, because the court dismissed the CPA claim and Kischel terminated the Lease/Rental Agreement, declaratory relief was not

---

[15] Footnote omitted.

appropriate. The court did not abuse its discretion in dismissing the request for a declaratory judgment.

We affirm summary judgment dismissal of the amended complaint.

WE CONCUR: