[No. 32402-1-I.   Division One.   April 18, 1994.]

THE STATE OF WASHINGTON, *Appellant,* v. BRYAN P. OLSON, *Respondent.*

*David R. Needy, Prosecuting Attorney,* and *Thomas E. Seguine, Deputy,* for appellant.

*Mark D. Mestel* and *Mestel & Muenster,* for respondent.

WEBSTER, C.J. — The State appeals an order dismissing its case against Bryan Olson for possession of a controlled substance with intent to manufacture alleging that the court improperly suppressed evidence.

FACTS

On May 19, 1992, police served a search warrant and discovered a marijuana growing operation at 420 Pine Street in Burlington, Washington. At the suppression hearing, the court ruled that the affidavit did not adequately detail Detective Brossard's qualifications for smelling either burning or growing marijuana, that the statements concerning power consumption were made in reckless disregard of the truth, and excluded that part of the affidavit from its probable cause analysis. The court suppressed the evidence and dismissed the case. Both orders were entered February 26, 1993.

DISCUSSION

Olson claims that dismissal is required because the State failed to appeal from the order suppressing the evidence and it did not assign error to the dismissal order.

■ The purpose of a notice of appeal is to notify the adverse party that an appeal is intended. *See* RAP 5.3(a). Even though the notice is jurisdictional, "where the deficiency in the notice is one of form only, and not of substance, the court is not necessarily deprived of jurisdiction". *In re Saltis*, 25 Wn. App. 214, 219, 607 P.2d 316, *aff'd*, 94 Wn.2d 889, 621 P.2d 716 (1980). Generally, issues are not considered on appeal unless raised by an assignment of error. *State v. Fortun*, 94 Wn.2d 754, 756, 626 P.2d 504 (1981). However, a " 'technical violation of the rules will not ordinarily bar appellate review, where justice is to be served by such review. . . . [W]here the nature of the challenge is perfectly clear, and the challenged finding is set forth in the appellate brief, [we] will consider the merits of the challenge.' " *State v. Williams*, 96 Wn.2d 215, 220, 634 P.2d 868 (1981) (quoting *Daughtry v. Jet Aeration Co.*, 91 Wn.2d 704, 710, 592 P.2d 631 (1979)).

Here, the State appealed the order of dismissal and not the suppression order. Its brief contains assignments of error, statements of issues raised addressing the suppression, arguments and references to specific legal authorities, and concludes by asking for specific relief. Even though the State did not assign error directly to the trial court's find-

ings of fact and conclusions of law it did specifically assign error to the court's action in excising statements concerning the smell of marijuana and power consumption from the search warrant affidavit. It also assigned error to the court's conclusion that the search warrant was not supported by probable cause. Thus, the State's challenge to the basis of the court's excising information from the affidavit supporting the search warrant is clear; if that basis is successfully challenged the court's conclusion that the search warrant affidavit failed to establish probable cause was also effectively challenged.

The notice of appeal clearly states what is intended, the brief was sufficient for Olson to respond, and he has responded. Olson has not been prejudiced and the review process has not been significantly impeded by any technical inadequacy in the State's opening brief.[1] Since the challenge is clear, justice will be served by reviewing the suppression and dismissal orders. We decide the case on its merits, promoting substance over form. RAP 1.2(a).[2]

■ The State first claims the court erred in excising from the search warrant affidavit the statement that Detective Brossard smelled marijuana at Olson's residence. A court reviews the validity of a search warrant under the abuse-of-discretion standard, *State v. Garcia*, 63 Wn. App. 868, 871, 824 P.2d 1220 (1992), and must accord great deference to the magistrate's determination of probable cause. *State v. Solberg*, 66 Wn. App. 66, 79, 831 P.2d 754 (1992), *rev'd in part on other grounds*, 122 Wn.2d 688, 861 P.2d 460 (1993). "[I]ssuance of a warrant is deemed proper if a reasonable, prudent person would understand from the facts contained in the affidavit that a crime has been committed,

---

[1]We note that in its reply brief the State assigns error to the court's findings of fact and conclusions of law, and the findings of fact and conclusions of law are part of the record.

[2]The State's failure to assign error to the court's conclusion of law does not preclude review. Normally an unchallenged conclusion of law becomes law of the case. However, "[a]n appellant's failure to properly assign error [may be] excused . . . when the nature of the challenge is perfectly clear." *State v. Slanaker*, 58 Wn. App. 161, 166, 791 P.2d 575, *review denied*, 115 Wn.2d 1031 (1990).

and evidence of the crime can be found at the place to be searched." *Garcia*, at 871. We evaluate affidavits in support of a search warrant application in a commonsense, rather than a hypertechnical, manner and resolve doubts in favor of the warrant's validity. *Garcia*, at 871.

■ The detection of the odor of growing marijuana, by officers with the necessary skill, training or experience in making such olfactory identifications, establishes probable cause to believe that marijuana is being manufactured. *Solberg*, 66 Wn. App. at 78. The identification of the smell of marijuana must consist of more than a "mere personal belief". *State v. Seagull*, 95 Wn.2d 898, 907, 632 P.2d 44 (1981). The probable cause standard is based on the reasonable person with the experience and expertise of the officer in question. 1 Wayne R. LaFave, *Search and Seizure* § 3.2(c), at 570-75 (2d ed. 1987); *see, e.g., State v. Fore*, 56 Wn. App. 339, 343, 783 P.2d 626 (1989), *review denied*, 114 Wn.2d 1011 (1990).

Here, the court found that "[t]he affidavit did not adequately detail Detective Brossard's qualifications for smelling either burning or growing marijuana. Therefore the information in the affidavit referring to the odor of marijuana should be excised." A search warrant was upheld in a recent case when the officer "testified he had visited at least 150 indoor marijuana growing operations in the preceding 3 years and had obtained 70 to 75 search warrants based upon his smelling marijuana. He had been correct every time. He testified he had no doubt it was marijuana he smelled". *State v. Remboldt*, 64 Wn. App. 505, 507, 827 P.2d 282, *review denied*, 119 Wn.2d 1005 (1992). In *Seagull* the affidavit "stated the affiant was a police officer who had observed marijuana both in plant and crushed leaf form for the past 8 years." *Seagull*, 95 Wn.2d at 907.

Here, the affidavit did not explicitly state that Brossard was trained to recognize the odor of growing or burning marijuana. However, the details of Detective Brossard's qualifications for smelling marijuana are essentially the same as those described in *Seagull* and *Remboldt* which upheld the magistrate's finding of probable cause.

[Brossard] graduated from the Basic Drug Enforcement Administration (DEA) course for controlled substances in February 1992. As of this date he has attended one controlled substances investigation seminars [*sic*]. He graduated from a 36 hour patrol officer course in controlled substances investigation. . . .

As of this date, while assigned to the task force, he participated in approximately 60 controlled substances investigations. In investigating these cases he has handled substances later identified as cocaine and marijuana. He has investigated approximately five cases involving the manufacture of marijuana.

The most commonsense interpretation of this experience is that the affidavit contained sufficient information for the magistrate to infer that Detective Brossard was qualified to identify both growing and burning marijuana by smell. Any other construction of the language would be strained, hypertechnical, and contrary to common sense. The affidavit does not contain a conclusory statement of personal belief. It enumerates why Brossard could identify marijuana by smell: he had been trained to identify controlled substances, had experience investigating controlled substances crimes, and had personally participated in marijuana manufacturing cases. We find no requirement that the officer be explicitly trained to identify the smell of marijuana; Brossard's experience was sufficient. The court below improperly excised from the affidavit the statement that the officer smelled growing marijuana when he entered Olson's house.

The State next claims that the court erred in excising the affidavit's statement concerning power consumption. It argues that based on the facts contained in the affidavit the statement that power consumption for the residence was approximately twice that of comparable residences was not made in reckless disregard of the truth. Olson asserts that the statement in the affidavit was a material misrepresentation, and, thus, properly stricken. *State v. Garrison*, 118 Wn.2d 870, 827 P.2d 1388 (1992); *Franks v. Delaware*, 438 U.S. 154, 57 L. Ed. 2d 667, 98 S. Ct. 2674 (1978).

■ Innocent or negligent mistakes do not satisfy the burden under *Franks*; the defense must allege intentional lies

or intentional reckless disregard for the truth and make a substantial preliminary showing in order to be entitled to a *Franks* hearing. *Garrison*, 118 Wn.2d at 872-73. If these requirements are not met the inquiry ends; only "[i]f these requirements are met, and the false representation . . . is relevant to establishment of probable cause, [is] the affidavit . . . examined." *Garrison*, at 873. If the *Franks* requirements are met and "[i]f the affidavit with the matter deleted or inserted, as appropriate, remains sufficient to support a finding of probable cause, the suppression motion fails and no hearing is required." *Garrison*, at 873.

The first question we address is whether the affiant intentionally misrepresented the power records or whether the statements concerning power consumption were reasonable given the information available at the time. The fact that the affiant's information later turns out to be inaccurate or even false is of no consequence if the affiant had reason to believe those facts were true. *State v. Cord*, 103 Wn.2d 361, 369, 693 P.2d 81 (1985); *Remboldt*, 64 Wn. App. at 509.

Here, the affiant made an estimate. He did not guess or speculate when he made the statement, he relied on data supplied to him from the best available sources. He compared Defendant's power consumption to that of similar residences, considering *both* square footage and the appliances probably used inside the residence. The estimate of square footage was based on data collected from the county assessor's office. The estimate of the electrical equipment at the Defendant's residence was based on the type of account Olson had with Puget Power; this information was collected and organized by Puget Power, not the affiant. The "normal" power consumption for the residence was calculated using Olson's actual power consumption, a "Factbook" published by Puget Power, and from a "Property Appraisal Record" from the Skagit County Assessor's office. That record shows the square footage of Olson's residence to be 1,242 square feet. Statistics found in the factbook show an average power consumption of 11,950 kilowatt hours (kwh) for residences of 1,550 square feet in 1990 and 12,082 kwh for residences of

1,500 square feet in 1991. The calculated power consumption for Olson's residence was 9,894 kwh for 1990 and 10,003 kwh for 1991.[3] The actual power consumption for Olson's residence for 1991 was 20,040 kwh. We find that under these facts the affidavit's statement that Olson's residence consumed approximately twice the power needed to operate a residence of that size was reasonably accurate, and was not intentionally made in disregard of the truth.

The court below focused on the materiality prong under *Franks*, when it stated that "in order for a warrant to be based on use of electricity it should be more unusual or more shocking than this [150 to 160 percent of normal]". Thus, the court orally concluded that the statement was inaccurate and the power consumption was insufficient to support probable cause. However, the court must find not only that the statement was material to the finding of probable cause, but also that the statement was knowingly and intentionally made in disregard of the truth. *Garrison*, 118 Wn.2d at 872. Since we find the statement was not knowingly and intentionally made in disregard of the truth, the court improperly excised the statement from the affidavit.

We reverse both orders and remand for trial.

SCHOLFIELD and AGID, JJ., concur.

Review granted at 125 Wn. 2d 1001 (1994).

---

[3]The calculations were 9,894 kwh = (1,242 sq. ft./1,550 sq. ft. x 11,950 kwh) and 10,003 kwh = (1,242 sq. ft./1,500 sq. ft. x 12,082 kwh).