[No. 67234-2. En Banc.]
Argued May 11, 1999. Decided June 17, 1999.

JULIA K. HINER, *Respondent*, v. BRIDGESTONE/FIRESTONE, INC., *Petitioner.*

*Randall & Danskin, P.S.*, by *Michael J. Myers* and *Michael L. Wolfe*, for petitioner.

*Michael E. De Grasse*, for respondent.

*Stewart A. Estes* on behalf of Washington Defense Trial Lawyers, amicus curiae.

SMITH, J. — Petitioner Bridgestone/Firestone, Inc., a corporation, seeks discretionary review of a decision of the Court of Appeals, Division Three, reversing judgment as a

matter of law by the Walla Walla County Superior Court on Respondent Julia K. Hiner's product liability claim and affirming dismissal of Petitioner's affirmative defense of entity liability. The Court of Appeals concluded that Respondent had provided sufficient evidence to support her claim against Petitioner under the Washington Product Liability Act and that the affirmative defense of entity liability in a product liability claim does not apply to other than manufacturers and product sellers. We granted review. We reverse.

## QUESTIONS PRESENTED

The questions presented in this case are (1) whether under Court Rule (CR) 50(a) Respondent presented sufficient evidence to support a claim under the Product Liability Act, chapter 7.72 RCW, against Petitioner, the manufacturer of snow tires; and (2) whether under the Product Liability Act the affirmative defense of entity liability applies to other than manufacturers and product sellers.

## STATEMENT OF FACTS

On June 19, 1995, Respondent Julia K. Hiner filed a complaint in the Walla Walla County Superior Court against Petitioner Bridgestone/Firestone, Inc. under the Washington Product Liability Act (PLA), chapter 7.72 RCW, for not providing warnings on its snow tires that mounting studded snow tires on only the front wheels of a front-wheel drive vehicle was unsafe.[1] Respondent claimed damages for personal injuries she sustained in an accident on January 18, 1993 as she drove her automobile from Walla Walla to Spokane on State Route 127.[2] She claimed that prior to the accident she was unaware of the danger of having studded snow tires on only the front wheels of a front-wheel drive vehicle[3] and that the specific tire configuration caused her

[1] Clerk's Papers at 3-5.

[2] *Id.* at 3; Report of Proceedings (Oct. 15, 1996) at 74.

[3] Report of Proceedings (Oct. 15, 1996) at 70.

to lose control of her 1988 Hyundai Excel[4] (a front-wheel drive vehicle) on the wet road and collide with the trailer of an oncoming grain truck.[5] Respondent suffered serious injuries which included a punctured lung, a broken arm and leg, multiple facial wounds, and an ankle joint replacement.[6] She claimed her injuries seriously affected her careers as a nurse and as a fashion model.[7]

In late 1990 or early 1991, Respondent's father gave her a set of two studded snow tires he had stored in his garage.[8] The record does not indicate how he acquired them, when he acquired them or whether he had used them. The tires were manufactured in 1985 by Petitioner Bridgestone/Firestone, Inc.[9] Respondent first used the tires on her Hyundai automobile without incident in late 1990 or early 1991.[10] On January 4, 1993 she had the tires installed on the front wheels of her automobile by Louis J. Preso, a service station operator.[11] The tires on the rear wheels, Goodyear Corsica radial tires,[12] were original equipment and remained on the automobile.[13] The accident occurred on January 18, 1993 following installation of the snow tires.

In its answer to Respondent's complaint, Petitioner raised the affirmative defense of entity liability[14] which al-

---

[4]*Id.* at 64.

[5]*Id.* at 78, 94-95.

[6]Report of Proceedings (Oct. 16, 1996) at 94-95, 106.

[7]*Id.* at 108-09.

[8]Report of Proceedings (Oct. 15, 1996) at 65.

[9]Pet. for Resp't [Petitioner] Bridgestone/Firestone, Inc. for Discretionary Review at 3. The studs were not installed by Petitioner.

[10]Report of Proceedings (Oct. 15, 1996) at 65; (Oct. 16, 1996) at 129.

[11]*Id.* at 67.

[12]*Id.* (Oct. 16, 1996) at 220.

[13]*Id.* (Oct. 16, 1996) at 130. Respondent estimated the automobile had approximately 40,000 miles on it. *Id.* at 132.

[14]Clerk's Papers at 6-7. *See* RCW 4.22.

lows the trier of fact to apportion liability among any other parties proven to be reckless, negligent or otherwise at "fault" for plaintiff's damages.[15]

On November 6, 1995, Respondent filed a motion to amend her complaint to include a claim under the Washington Consumer Protection Act (CPA), chapter 19.86 RCW, and a claim for punitive damages under Ohio law.[16] The motion was granted by the trial court, the Honorable Donald W. Schacht, on December 4, 1995.[17]

On October 3, 1996, the trial court issued an order on summary judgment which, among other things, granted Respondent's motion to strike Petitioner's affirmative defense which claimed proportionate liability of other entities.[18] In a letter ruling on October 3, 1996, the trial court granted Petitioner's motion to dismiss Respondent's claim under the CPA and for punitive damages.[19] The case then proceeded to trial before a jury in the Walla Walla County Superior Court on October 15-18, 1996 before Judge Donald W. Schacht.

At the conclusion of Respondent's case-in-chief, Petitioner made a motion to dismiss for failure to present a prima facie case.[20] The trial court granted the motion[21] and entered an order granting judgment as a matter of law for Petitioner under Civil Rule (CR) 50(a).[22] Judgment was entered on November 13, 1996.[23]

---

[15]16 DAVID K. DEWOLF & KELLER W. ALLEN, WASHINGTON PRACTICE: TORT LAW AND PRACTICE § 6.13, at 148-50 (1993). *See* RCW 4.22.015 and RCW 4.22.070(1).

[16]Clerk's Papers at 8-9. Petitioner's manufacturing plant is located in Akron, Ohio. Petitioner is "believed" by counsel to be a Tennessee corporation.

[17]*Id.* at 15.

[18]*Id.* at 148-51. These included the installer of the studded snow tires, the manufacturer of the Goodyear tires on the rear wheels, and the manufacturer of the Hyundai automobile.

[19]*Id.* at 152.

[20]Report of Proceedings at 385.

[21]*Id.* at 397.

[22]Clerk's Papers at 386-87.

[23]*Id.* at 380.

On December 10, 1996, Respondent sought direct review by this court.[24] Petitioner cross-appealed the trial court's order dismissing its affirmative defense of entity liability.[25] The matter was transferred to the Court of Appeals, Division Three.[26]

The Court of Appeals, Division Three, the Honorable John A. Schultheis writing, reversed the order granting judgment as a matter of law for Petitioner and reinstated Respondent's claim under the PLA.[27] It affirmed both the order dismissing Petitioner's affirmative defense of entity liability[28] and dismissal of Respondent's claim under the CPA.[29]

Petitioner filed a petition with this court seeking review of the decision of the Court of Appeals which reinstated the product liability claim and affirmed dismissal of Petitioner's entity liability defense. This court granted review on March 2, 1999.

## DISCUSSION
### PRODUCT LIABILITY CLAIM

■ Petitioner Bridgestone/Firestone contends the Court of Appeals erred in reinstating Respondent's product liability claim which the trial court dismissed as a matter of law under CR 50(a)(1) at the close of Respondent's case-in-chief. CR 50(a)(1) states:

**Judgment as a Matter of Law.**

(1) *Nature and Effect of Motion.* If, during a trial by jury, a party has been fully heard with respect to an issue and there

---

[24]Notice of Appeal to the Supreme Court (Dec. 10, 1996).

[25]Notice of Cross-Appeal to Supreme Court (Dec. 17, 1996).

[26]Order (Nov. 5, 1997).

[27]*Hiner v. Bridgestone/Firestone, Inc.*, 91 Wn. App. 722, 734, 959 P.2d 1158 (1998).

[28]*Id.* at 736-37.

[29]*Id.* at 729-30.

is no legally sufficient evidentiary basis for a reasonable jury to find or have found for that party with respect to that issue, the court may grant a motion for judgment as a matter of law against the party on any claim, counterclaim, cross-claim, or third party claim that cannot under the controlling law be maintained without a favorable finding on that issue . . . .

"Granting a motion for judgment as a matter of law is appropriate when, viewing the evidence most favorable to the nonmoving party, the court can say, as a matter of law, there is no substantial evidence or reasonable inference to sustain a verdict for the nonmoving party."[30] The substantial evidence must be such that it would convince "an unprejudiced, thinking mind."[31]

The claim of Respondent that her injuries were caused by Petitioner's failure to place warnings on its tires that installing studded snow tires on only the front wheels was unsafe constitutes a failure-to-warn claim under the PLA, specifically RCW 7.72.030(1) and (1)(b), which state:

**Liability of manufacturer.** (1) A product manufacturer is subject to liability to a claimant if the claimant's harm was proximately caused by the negligence of the manufacturer in that the product was not reasonably safe as designed or not reasonably safe because adequate warnings or instructions were not provided.

. . . .

(b) A product is not reasonably safe because adequate warnings or instructions were not provided with the product, if, at the time of manufacture, the likelihood that the product would cause the claimant's harm or similar harms, and the seriousness of those harms, rendered the warnings or instructions of the manufacturer inadequate and the manufacturer could have provided the warnings or instructions which the claimant alleges would have been adequate.

---

[30]*Sing v. John L. Scott, Inc.*, 134 Wn.2d 24, 29, 948 P.2d 816 (1997).

[31]*Hojem v. Kelly*, 93 Wn.2d 143, 145, 606 P.2d 275 (1980).

■ Under RCW 7.72.030(1), Respondent must show that the absence of a warning of possible dangers from specific tire usage as applied was the proximate cause of her injuries. Proximate causation includes both cause in fact and legal causation.[32] "Cause in fact refers to the 'but for' consequences of an act—the physical connection between an act and an injury."[33]

The Court of Appeals concluded that Respondent provided sufficient evidence to demonstrate that, but for the absence of a warning on the tires themselves, Respondent's accident and injuries would not have occurred.[34] Specifically, the court stated "a warning imprinted on the tire would be the most efficacious method of informing anyone who actually mounts the tires."[35] The court stated that while the Respondent "may not have read the warning . . . the person she hired to do the work for her *might* have."[36]

The record does not support the conclusion of the Court of Appeals on proximate cause. Both the Court of Appeals and Respondent Hiner rely upon *Ayers v. Johnson & Johnson Baby Products Co.*[37] in which parents of a 15-month-old baby brought a product liability action against the manufacturer of baby oil after the baby swallowed the oil and suffered brain damage from aspiration.[38] This court concluded the parents had presented sufficient evidence of causation and inadequacy of warnings on the purchased bottle of baby oil to support the jury's verdict in their

---

[32]*Ayers v. Johnson & Johnson Baby Prods. Co.*, 117 Wn.2d 747, 753, 818 P.2d 1337 (1991).

[33]*Hartley v. State*, 103 Wn.2d 768, 778, 698 P.2d 77 (1985) (citing *King v. City of Seattle*, 84 Wn.2d 239, 249, 525 P.2d 228 (1974)).

[34]*Hiner*, 91 Wn. App. at 733-34.

[35]*Id.*

[36]*Id.* at 734 (emphasis added).

[37]117 Wn.2d 747, 818 P.2d 1337 (1991).

[38]*Id.* at 750.

favor.[39] The evidence included testimony from the mother that "she made a practice of reading labels on products"[40] and shelved dangerous products high out of the reach of her 15-month-old twins.[41] The mother also testified that, besides placing dangerous products out of reach, she specifically told her teenage daughters to keep their purses away from the twins if their purses contained anything that could harm a baby.[42]

This court concluded in *Ayers* the jury was entitled to infer that, if the parents had known of the dangers of aspiration, they would have treated the baby oil with the same caution they used with other items they recognized as highly dangerous, and that "had they done so, the accident would never have occurred," concluding that the evidence of causation presented to the jury was sufficient to sustain the jury's verdict.[43]

██ In this case, Respondent testified she had not read the notice in her Hyundai owner's manual which stated "Snow tires should be installed on all four wheels; otherwise, poor handling may result."[44] While Respondent is correct in asserting this statement does not refer specifically to "studded" snow tires,[45] it nevertheless does refer to snow tires. Respondent testified she looked at her owner's manual for some information,[46] but had not read the statement about snow tires in the five years she had the manual. She also testified she did not look for warnings on any

---

[39]*Id.*

[40]*Id.* at 754.

[41]*Id.*

[42]*Id.* at 754. The injured infant obtained the baby oil from a small bottle in the purse of his teenage sister who had transferred the oil from its original container. *Id.* at 750.

[43]*Id.*

[44]Report of Proceedings (Oct. 15, 1996) at 67; (Oct. 16, 1996) at 137.

[45]*Id.* (Oct. 15, 1996) at 66.

[46]*Id.* (Oct. 16, 1996) at 135.

of her tires, either the ones on the front wheels or those on the rear wheels, prior to the accident.[47] She acknowledged she had not completely read the owner's manual for her automobile.[48]

Respondent's testimony does not support her bare assertion that she would not have placed the studded snow tires on the front wheels of her automobile even if warnings had been imprinted on them. She did not read her owner's manual about snow tires, and did not examine the snow tires for warnings. She contends the testimony of her surgeon regarding her cooperation in her recovery demonstrates she would have heeded warnings if there had been any.[49] However, the surgeon's testimony relates to her behavior after the accident and not to her behavior before the accident. It is not at all relevant to the issues in this case.

The record also does not support the conclusion suggested by Respondent that if there had been warnings, the installer "might have" read them,[50] with the inference that the installer then would not have installed the studded snow tires on the front wheels only. This is mere speculation. Respondent did not call the installer as a witness. Consequently, there was not substantial evidence in the entire record upon which a reasonable jury could infer that, but for the absence of warnings, Respondent's accident and injuries would not have occurred. Because proximate causation requires that both cause in fact and legal causation be shown and Respondent has not provided sufficient evidence to demonstrate cause in fact, we need not reach the issue of legal causation. It is also not necessary to engage in the balancing test required under RCW 7.72.030(1)(b).[51]

---

[47]*Id.* (Oct. 15, 1996) at 65.

[48]*Id.* (Oct. 16, 1996) at 175.

[49]*See* Br. of Appellant at 17-18; Report of Proceedings at 371.

[50]*Hiner,* 91 Wn. App. at 734.

[51]*See Ayers,* 117 Wn.2d at 763. Under RCW 7.72.030(1)(b) the likelihood that the product at the time of manufacture would cause the claimant's harm or simi-

*Entity Liability*

■ Petitioner also contends the trial court erred in dismissing its affirmative defense of entity liability under RCW 4.22.015 and RCW 4.22.070(1),[52] arguing that liability should be shared by the installer of the studded snow tires, the manufacturer of the Goodyear tires on the rear wheels, and the manufacturer of the Hyundai automobile.[53]

The Court of Appeals concluded that a defendant manufacturer can apportion fault only to an entity liable to a plaintiff under the PLA.[54] The court defined "fault" in a product liability claim to include only those liable in a product liability claim, that is, manufacturers and product sellers.[55] In upholding dismissal by the trial court, it concluded that because Petitioner Bridgestone/Firestone was the only manufacturer of the tires mounted on the front wheels of Respondent's automobile prior to the accident, other entities could not be held liable.[56]

The plain language of the contributory fault statute, however, does not support the conclusion of the Court of Appeals. RCW 4.22.015 states in relevant part:

> **"Fault" defined.** "Fault" includes acts or omissions, including misuse of a product, that are in any measure negligent or reckless toward the person or property of the ac-

---

lar harms and the seriousness of those harms are balanced against the adequacy of the warnings provided and the cost to the manufacturer to provide warnings. *Id.* This balancing test is also called the "risk-utility test." *Soproni v. Polygon Apartment Partners*, 137 Wn.2d 319, 327, 971 P.2d 500, 505 (1999). A plaintiff may use a "consumer expectations" test which requires the plaintiff to show that the product was " 'unsafe to an extent beyond that which would be contemplated by the ordinary consumer.' " *Id.* (quoting *Falk v. Keene Corp.*, 113 Wn.2d 645, 654, 782 P.2d 974 (1989)). This separate test was not referred to in the decision of the Court of Appeals.

[52]Br. of Resp't Bridgestone/Firestone, Inc. at 43.

[53]*Id.* at 45-49.

[54]*Hiner*, 91 Wn. App. at 736.

[55]*Id.* at 736-37.

[56]*Id.*

tor or others, or that subject a person to strict tort liability or liability on a product liability claim. The term also includes breach of warranty, unreasonable assumption of risk, and unreasonable failure to avoid an injury or to mitigate damages. Legal requirements of causal relation apply both to fault as the basis for liability and to contributory fault.

RCW 4.22.070(1) states in pertinent part:

In *all* actions involving fault of more than one entity, the trier of fact shall determine the percentage of the total fault which is attributable to *every entity which caused the claimant's damages except entities immune from liability to the claimant under Title 51 RCW. . . .* The entities whose fault shall be determined include the claimant or person suffering personal injury or incurring property damage, defendants, third-party defendants, entities released by the claimant, entities with any other individual defense against the claimant, but shall not include those entities immune from liability to the claimant under Title 51 RCW. . . .

(Emphasis added.)

The statutory definition of "fault" in RCW 4.22.015 is quite broad and is not limited to manufacturers and product sellers. Nothing in the definition suggests that only certain parts of it apply in certain types of cases. Under that definition, a party could still be held liable even though it was neither a manufacturer nor seller of a product involved in a product liability action. The definition includes all degrees of fault in tort actions except intentional torts.[57]

The language of RCW 4.22.070(1) is similarly quite broad, applying to "*all* actions involving fault of more than one entity . . . ." (Emphasis added.) RCW 4.22.070 "encourages trials when the principal issue is the liability of the empty chair, that is, a party that is either not represented,

---

[57]*Welch v. Southland Corp.*, 134 Wn.2d 629, 635, 952 P.2d 162 (1998).

immune from suit, or otherwise not in the courtroom."[58]

In *Lundberg v. All-Pure Chemical Co.*[59] plaintiffs brought a failure-to-warn claim under the PLA against the manufacturer of pool chlorinating products after the products exploded.[60] Jury instructions included an instruction on plaintiff's comparative negligence.[61] The jury found plaintiff 51 percent comparatively negligent and her damage award was reduced accordingly.[62] On appeal, plaintiff claimed consideration of "fault" was improper because strict liability focuses on the product and not on negligent conduct.[63] The Court of Appeals upheld the jury instruction, stating "[t]he legislature has determined that the comparative fault doctrine shall apply to all actions based on 'fault,' including strict liability and product liability claims."[64]

Respondent contends the Legislature intended to limit, rather than expand, the category of defendants subject to a product liability claim,[65] relying on *Buttelo v. S.A. Woods-Yates American Machine Co.*[66] In *Buttelo*, however, the court merely limited a product lessor's liability under the Product Liability Act and in fact discussed a non-seller defendant's potential vicarious liability for an employee's negligence in supervising installation of the product.[67]

Respondent also argues that *Washington Water Power*

---

[58]Phillip A. Talmadge, *Product Liability Act of 1981: Ten Years Later*, 27 GONZ. L. REV. 153, 166 (1991/92).

[59]55 Wn. App. 181, 777 P.2d 15, *review denied*, 113 Wn.2d 1030, 784 P.2d 530 (1989).

[60]*Id.*

[61]*Id.* at 182.

[62]*Id.* at 183.

[63]*Id.*

[64]*Id.* at 186.

[65]Answer to Pet. for Review at 8-9.

[66]72 Wn. App. 397, 864 P.2d 948 (1993).

[67]*Id.* at 406.

*Co. v. Graybar Elec. Co.*[68] stands for the proposition that the affirmative defense of entity liability is not available in a product liability claim.[69] *Graybar* is not pertinent to this case, holding only that a plaintiff has no cause of action for a product-related harm against a manufacturer or product seller except under the PLA because common law remedies are not available.[70] The case does not involve the affirmative defense of entity liability.

The interplay between RCW 4.22.015 and RCW 4.22.070 has been described by one writer in this manner:

> The incorporation of RCW 4.22.015's definition of fault has important consequences for the application of RCW 4.22.070. Because RCW 4.22.015 includes "strict tort liability" within the meaning of "fault," RCW 4.22.070 applies in cases of strict liability just as it governs cases of simple negligence. Likewise, because RCW 4.22.015 includes "liability on a product liability claim" within the meaning of "fault," RCW 4.22.070 applies with full force to claims based on defective products. In sum, the statutory modification of joint and several liability applies to *all* actions based upon the broad definition of fault, whatever the theory of liability.[71]

(Emphasis added.)

The plain language of RCW 4.22.015 and RCW 4.22.070(1) does not support a conclusion that the affirmative defense of entity liability applies only to manufacturers and product sellers in a product liability action.

## CONSUMER PROTECTION CLAIM

Respondent in her briefs before this court purports to assign error to dismissal by the trial court of her claim

---

[68]112 Wn.2d 847, 774 P.2d 1199 (1989).

[69]Answer to Pet. for Review at 10.

[70]112 Wn.2d at 855-56.

[71]Gregory C. Sisk, *Interpretation of the Statutory Modification of Joint and Several Liability: Resisting the Deconstruction of Tort Reform*, 16 U. PUGET SOUND L. REV. 1, 22 (1992).

under the CPA,[72] RCW 19.86.090, which was affirmed by the Court of Appeals.[73] Petitioner responds that, even if the court erred, Respondent did not perfect her appeal of the trial court's summary dismissal of her claim because her notice of appeal did not refer to the order dismissing her claim under the CPA, but that she now attempts to assign error to that dismissal in her briefs before this court.[74] Petitioner argues that Respondent's CPA claim is outside the scope of this appeal under Rule of Appellate Procedure (RAP) 2.4(b).[75]

■ ■ Under RAP 2.4(a) the appellate court will review "the decision or parts of the decision designated in the notice of appeal . . . ." A summary dismissal order is a "part of the decision" ultimately rendered in the case.[76] The "[p]urpose of a notice of appeal is to notify the adverse party that an appeal is intended."[77] The final judgment in this case includes the interlocutory order dismissing Respondent's claim under the CPA. RAP 1.2(a) states "These rules will be liberally interpreted to promote justice and facilitate the decision of cases on the merits. . . ."

■ An appellate court may exercise its discretion in considering a case on its merits despite a technical flaw in compliance with the Rules of Appellate Procedure.[78] "This discretion, moreover, should normally be exercised unless there are compelling reasons not to do so."[79] Although Respondent's purported appeal could be considered properly before this court, we nevertheless decline to consider

---

[72]Br. of Appellant at 2.

[73]*Hiner,* 91 Wn. App. at 729-30.

[74]Br. of Resp't Bridgestone/Firestone, Inc. at 41.

[75]*Id.* at 41-43.

[76]*See Fox v. Sunmaster Prods., Inc.,* 115 Wn.2d 498, 505, 798 P.2d 808 (1990).

[77]*State v. Olson,* 74 Wn. App. 126, 128, 872 P.2d 64 (1994), *aff'd,* 126 Wn.2d 315, 893 P.2d 629 (1995).

[78]*Olson,* 126 Wn.2d at 323.

[79]*Id.*

this assignment of error because she has not shown any compelling reason for the court to go beyond the questions raised in the petition for review which we granted to Petitioner Bridgestone/Firestone, Inc.

## SUMMARY AND CONCLUSIONS

The Court of Appeals reversed judgment granted as a matter of law to Petitioner Bridgestone/Firestone, Inc. by the Walla Walla County Superior Court in this case in which Respondent Julia K. Hiner sued for damages under the Washington Product Liability Act (PLA), but affirmed dismissal by the trial court of Petitioner's affirmative defense of entity liability. The Court of Appeals concluded Respondent had provided sufficient evidence to present a prima facie case under the PLA and that the affirmative defense of entity liability in a product liability claim was limited to manufacturers and product sellers.

Under the PLA, Respondent Hiner must establish proximate cause and must show that, but for the absence of warnings on her Bridgestone/Firestone tires of the dangers of mounting studded snow tires on only the front wheels of a front-wheel drive vehicle, the accident would not have occurred. Proximate causation requires proof of both cause in fact and legal causation. There is not sufficient evidence in the record to establish cause in fact.

The plain language of the contributory fault statute does not limit apportioning fault only to other manufacturers and product sellers in a product liability case. The statutory definition of "fault" in RCW 4.22.015 is sufficiently broad to include other parties who may be neither manufacturers nor product sellers.

The Court of Appeals upheld dismissal by the trial court of Respondent's claim under the Washington CPA. That issue is not before this court under the petition for review granted to Petitioner Bridgestone/Firestone, Inc.

We reverse that portion of the decision of the Court of Appeals which reversed the decision of the Walla Walla

County Superior Court granting judgment as a matter of law to Petitioner Bridgestone/Firestone; and also reverse that portion of the decision which affirmed dismissal of Petitioner's affirmative defense of entity liability.

GUY, C.J., and JOHNSON, MADSEN, ALEXANDER, TALMADGE, SANDERS, and IRELAND, JJ., concur.

Reconsideration denied July 22, 1999.

[No. 66136-7. En Banc.]
Argued November 17, 1998.     Decided June 24, 1999.
JOHN HERTOG, *as Guardian, Respondent,* v. THE CITY OF SEATTLE, ET AL., *Petitioners.*