112 P.3d 571 (2005)
Gregory T. BOSTWICK, an individual, Appellant,
v.
BALLARD MARINE, INC., a Washington corporation, Respondent.
No. 53563-3-I.
Court of Appeals of Washington, Division 1.
May 31, 2005.
*572 Dean Gordon Von Kallenbach, Young deNormandie PC, Seattle, WA, for Appellant.
Jerret E. Sale, Deborah Lynn Carstens, Bullivant Houser Bailey PC, Seattle, WA, for Respondent.
*573 COX, C.J.
¶ 1 At issue in this lawsuit is whether Ballard Marine, Inc. was "in the business of leasing" for purposes of the Washington Products Liability Act (WPLA) at the time a sandblasting pot injured Gregory Bostwick. We also decide whether the WPLA preempts a negligence claim against one who is not a "product seller" under the WPLA.
¶ 2 We hold that the trial court properly granted summary dismissal of the products liability claim against Ballard Marine. It was not "in the business of leasing" and thus was not a "product seller" for purposes of the WPLA. Because it was not a "product seller" under the WPLA, the negligence claim against Ballard Marine survives. The trial court incorrectly granted summary dismissal of this claim. Accordingly, we affirm in part, reverse in part, and remand for further proceedings.
¶ 3 In 1975, Ballard Marine, as lessee, entered into a long-term lease of a shipyard with Florence Evans, the property's owner. In 1994, it subleased part of the shipyard to Marine Fluid Systems, Inc., a marine pipe fitting company. Bostwick worked for Marine Fluid, sandblasting and painting boats.
¶ 4 At the time of the accident, Bostwick was overseeing operation of a five foot high sandblasting pot when he noticed it was leaking air from the lid. He attempted to tighten the lid by climbing up onto the pot and hitting one of the wingnuts securing the lid with a two-by-four. When he struck the wingnut, pressurized air exploded from the pot. The force of the air threw Bostwick to the ground. He suffered nerve damage resulting in paralysis in both arms.
¶ 5 Bostwick sued Ballard Marine on product liability and negligence theories. All parties moved for summary judgment. The trial court granted Ballard Marine's motion for summary judgment and dismissed with prejudice all of Bostwick's claims. In the same order, the court denied Bostwick's summary judgment motion.
¶ 6 Bostwick appeals. Ballard Marine cross appealed a discovery order that imposed costs against it.

PRODUCT SELLER
¶ 7 Bostwick argues that Ballard Marine was a "product seller" under the WPLA, that breached the duties of a manufacturer, and that the breaches proximately caused his injury.[1] Specifically, he contends that the record demonstrates that Ballard Marine was "in the business of leasing . . . products" under the act. We hold that there are no genuine issues of material fact that show the activities of Ballard Marine were within the scope of being "in the business of leasing ... products" for purposes of being a "product seller."
¶ 8 In a summary judgment motion, the moving party bears the initial burden of showing the absence of an issue of material fact.[2] If the moving party is a defendant and meets this initial showing, then the inquiry shifts to the party with the burden of proof at trial, the plaintiff.[3] If, at this point, the plaintiff `fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial', then the trial court should grant the motion.[4] In making this responsive showing, the nonmoving party cannot rely on the allegations made in its pleadings.[5] The evidence and all reasonable inferences therefrom is considered in the light most favorable to the plaintiff, the nonmoving party.[6] An appellate court reviewing a summary judgment places *574 itself in the position of the trial court and considers the facts in a light most favorable to the nonmoving party.[7] We review de novo an order granting summary judgment.[8]

"In the Business of Leasing"
¶ 9 The trial court determined in its summary judgment order that Ballard Marine was not a "product seller" because it was "not in the business of leasing." We agree.
¶ 10 The WPLA defines a "product seller" as:
any person or entity that is engaged in the business of selling products, whether the sale is for resale, or for use or consumption. The term includes a manufacturer, wholesaler, distributor, or retailer of the relevant product. The term also includes a party who is in the business of leasing or bailing such products.[9]
¶ 11 The WPLA applies to claims arising from a "product" sold by a "product seller" giving rise to a "product liability claim."[10] By definition, "product seller" includes any person in the business of leasing "that product or its component part or parts, which gave rise to the product liability claim."[11]
¶ 12 The WPLA "differentiates between those who are `in the business of' leasing ... and those who are not. Only those who are `in the business' of leasing ... are `product sellers'."[12] Courts generally hold product lessors to the standard of care imposed on a product seller when the lessor is "found to be in the business of leasing, in the same general sense as the seller of personalty is found to be in the business of manufacturing or retailing."[13] Products liability principles apply only when "the volume of transactions is sufficient to give the ... lessor the ability to guard against and to pay for any injury ... [and] ... to justify holding it accountable for the acts of the manufacturer."[14]
¶ 13 Policy considerations that justify imposing on product sellers a duty to protect the public from unsafe products were stated and applied in Buttelo v. S.A. Woods-Yates American Machine Co., Inc. There, the court considered whether Paxport Mills was liable for an injury caused by a wood molder Paxport had leased to Western, a custom manufacturer of wood products.[15] After examining the legislative purpose of the WPLA, the court held that Paxport was not "in the business of leasing."[16] It concluded that imposing manufacturers' duties on a "product seller" is justified when (1) the seller is in the position to exert pressure on the manufacturer to influence the product's design, (2) the consuming public typically looks to the seller for advice in the selection, operation and maintenance of the product, and (3) the seller is best able to spread the costs of injury among the public.[17] The seller involved in an isolated or casual transaction lacks not only the ability to exert pressure on manufacturers and spread the costs of injury, but also the expertise that would induce buyers' reliance.[18]
¶ 14 The court concluded that Paxport's scant leasing activities did not justify the imposition of liability. There was no evidence that Paxport ever engaged in manufacture or sale of molders, or used the molder in *575 its own business.[19] Nor was there any indication that Paxport ever entered into another lease with any company other than the long-term equipment and machinery lease with Western.[20] Other factors that weighed against imposing liability on Paxport were specific lease terms making Western responsible for inspecting and maintaining the molder, and assuming the risk of its loss,[21] and absence of any express or implied warranties by Paxport with respect to the molder.[22]
¶ 15 Here, Bostwick has the burden of showing that a genuine issue of material fact exists as to whether Ballard Marine is a "product seller" by virtue of being "in the business of leasing." At oral argument, Bostwick maintained that Ballard Marine's tax records supported a conclusion that leasing equipment was its principal business. However, evidence in the record indicates that there is no way to determine from the tax records whether Ballard Marine's "rental income" was derived from the rental of equipment or of real property. Thus, the tax records do not create a genuine issue of material fact or otherwise impact our analysis. Rather, applying the principles of Buttelo to this case, we conclude that Bostwick has failed in his burden to demonstrate a genuine issue of material fact.
¶ 16 Here, there is no evidence in the record that the first of the three policy considerations articulated in Butello applies to Ballard Marine. Specifically, there is no evidence that Ballard Marine is in a position to exert pressure on the manufacturer of the sandblasting pot to influence its design. Rather, the record indicates that the identity of the manufacturer of the sandblasting pot is unknown. Thus, Bostwick, who has the burden of proof at trial, fails to establish any genuine issue of material fact on the first of the three relevant criteria necessary to establish Ballard Marine's status as a product seller.
¶ 17 We move to the second element whether the consuming public typically looks to Ballard Marine for advice in the selection, operation, and maintenance of the sandblasting pot.
¶ 18 The record contains no written lease to indicate terms of the equipment agreement between Ballard Marine and Marine Fluid, Inc. There is no evidence in the record that Ballard Marine ever operated the equipment, or had any use for it. Although there is no information in the record regarding equipment maintenance in general, Marine Fluid performed maintenance on the sandblasting pot. Although Ballard Marine's owner ordered the pot disposed of after the accident, Marine Fluid arranged the disposal and purchased a replacement pot.
¶ 19 The record contains only a few written references to the sandblasting pot in the monthly invoices Ballard Marine sent to Marine Fluid. The invoices from August 1994 through December 1994 contain charges for "sandblast pot and air compressor" at $100 per day. There is no other general equipment rental charge. Starting in October 1994, the two items are billed separately at $100 per day for the sandblast pot and $600 per month for the air compressor. Starting in January 1995, the $600 monthly rental for the air compressor alone appears, though the record indicates that the price reflected a combined fee for the sandblast pot and the air compressor. No further references to the sandblasting pot appear in the invoices. The record reflects that another company, brought in by Marine Fluid to do sandblasting and painting for Marine Fluid's customers, rented the pot and air compressor from Ballard Marine until Marine Fluid decided to provide this service directly.
¶ 20 These facts do not establish public reliance on Ballard Marine for the selection, operation or maintenance of the sandblasting pot. On the contrary, they indicate that Ballard Marine leased its equipment to no more than two companies, each of which appeared to be experienced in the selection, operation, and maintenance of the sandblasting *576 pot, and to assume that responsibility. Bostwick has not carried the burden of demonstrating a genuine issue of fact on this point.
¶ 21 Although Bostwick claims a list of facts established by "uncontested evidence" supports a conclusion that Ballard Marine was "in the business of leasing",[23] he fails to provide a single citation to the record. We are not required to search the record to establish what he asserts and decline to do so.
¶ 22 Finally, we consider the third element whether Ballard Marine is best able to spread the costs of injury among the public. Again, there is nothing in the record to create a genuine issue of fact for this element.
¶ 23 While Ballard Marine certainly derived financial benefit from the lease of the sandblasting pot, neither policy considerations nor the record supports a conclusion that it was "in the business of leasing" the pot for purposes of the WPLA. Ballard Marine lacked the sales volume to influence the pot's design or manufacture, and its long term lease was either with Marine Fluid or Marine Fluid's business associates. Ballard Marine was not in the position to spread the cost of injury among the public, and there is no evidence that Ballard Marine exhibited any expertise that would justify consumer reliance on it regarding the sandblasting pot.
¶ 24 Moreover, as in Buttelo and the cases cited therein, Bostwick presented no evidence that Ballard Marine ever exercised control over either the pot, or the other shipyard equipment, had the opportunity or duty to inspect or maintain it, or used it in the course of its own business. Again, without citation to the record, Bostwick asserts that "Ballard Marine assumed the risk of loss and damage to the sandblast pot, and insured the pot." The record is devoid of evidence for this proposition.[24]
¶ 25 Bostwick points to two cases from other jurisdictions to support his argument. However, those cases are distinguishable in that, in each case, the lessor actively marketed a significant quantity of the defective product to multiple lessees.[25] In contrast, Ballard Marine's lease of a single sandblasting pot over a long term to two sub-tenants, does not present the same policy considerations for applying the principles of product liability.
¶ 26 In short, the record does not support the existence of any genuine issue of material fact that Ballard Marine was "in the business of leasing" for purposes of the WPLA. It was not. Because Bostwick fails to establish any genuine issue of material fact for purposes of his products liability claim, and Ballard Marine is entitled to judgment as a matter of law, the trial court properly granted summary judgment on this claim.

NEGLIGENCE OF NON-SELLERS
¶ 27 Bostwick argues that even if Ballard Marine were not liable under the WPLA as a product seller, it may still be liable for common law negligence as a non-seller. Thus, Bostwick argues, the trial court incorrectly granted summary judgment on his negligence claim. We agree.
¶ 28 Hiner v. Bridgestone/Firestone, Inc.[26] addressed the principle at issue here. In that case, a motorist was injured in a collision while driving a car on which tires manufactured by the defendant were mounted.[27] The trial court dismissed the motorist's products *577 liability claim at the close of the motorist's evidence.[28] The supreme court granted the motorist's petition for review from a decision of the court of appeals.[29]
¶ 29 The issue was whether under the WPLA the affirmative defense of entity liability applies other than to manufacturers and product sellers.[30] Reversing the court of appeals, the supreme court concluded that contributory negligence under the comparative fault statute[31] could be attributed to entities that would not be liable under the WPLA.[32] In commenting on the argument that the legislature intended to limit, rather than expand, the category of defendants subject to a product liability claim, the supreme court noted the case of Buttelo v. S.A. Woods-Yates American Machine Co.[33] The supreme court stated that Buttelo "merely limited a product lessor's liability under the Product Liability Act and in fact discussed a non-seller defendant's potential vicarious liability for an employee's negligence in supervising installation of the product."[34] Thus, one who is not a "product seller" under the act may still be liable for negligence. The supreme court went on to address the same argument that Ballard Marine makes in this case: that Washington Water Power Co. v. Graybar Elec. Co.[35] preempts the negligence claim that Bostwick makes here. The supreme court explained in Hiner that Graybar held "only that a plaintiff has no cause of action for a product-related harm against a manufacturer or product seller except under the PLA because common law remedies are not available."[36] Nothing in the WPLA relieves one who is not a product seller from liability for negligence.
¶ 30 Here, it is clear that Ballard Marine is not a "product seller" under the WPLA. Graybar does not bar a negligence claim against Ballard Marine. The trial court's ruling granting summary dismissal of this claim was incorrect.

EXTRAORDINARY CIRCUMSTANCES
¶ 31 Finally, Ballard Marine moves to modify the ruling of a commissioner of this court denying its motion for extension of time to file its cross appeal of an order imposing costs arising from a discovery dispute. Because there are no extraordinary circumstances warranting relief, we deny the motion to modify.
¶ 32 On Bostwick's motion, the trial court sanctioned Ballard Marine, ordering it to pay $15,807.50 in costs for delay in producing discoverable documents. The court entered the order on November 6, 2003. Ballard Marine did not learn of the order until more than two months after entry of that order. Thus, it filed an untimely notice of cross appeal.
¶ 33 This court directed Ballard Marine to file a motion to extend time to file, which a commissioner subsequently denied. Ballard Marine moves to modify that ruling.
¶ 34 Ballard Marine argues that Rap 18.8 does not apply to cross appeals and, even if it does, the trial court's failure to notify Ballard Marine of the order's entry constitutes "extraordinary circumstances" permitting an extension. We reject these contentions. Consequently, we do not consider the merits of its cross appeal.

Extension of Time
¶ 35 Ballard Marine contends that the limitations of RAP 18.8 do not apply to notices of cross appeals, since cross appeals are not specifically listed in the rule.[37] We disagree.
*578 ¶ 36 RAP 5.1(d) states that "[a] party seeking cross review must file a notice of appeal or a notice for discretionary review within the time allowed by rule 5.2(f)." The latter time limit for purposes of this case is 14 days after the service of the notice filed by the other party. The plain words of these rules can only support the view that one seeks "cross review" by filing a "notice of cross appeal." No reasonable reading of the Rules of Appellate Procedure can support the argument that "notice of appeal" listed in RAP 5.1(d) and 18.8 excludes a notice of cross appeal.
¶ 37 We reject Ballard Marine's contention that in State v. Glenn,[38] the court of appeals held the more general provisions of RAP 18.8 apply to notices of cross appeal. This is an incorrect reading of the court's holding. In addressing the timeliness of Glenn's cross appeal, the court pointed out that it had granted his untimely motion for cross review, and that the State had failed to move for reconsideration of its decision.[39] The opinion does not discuss why the court initially accepted the untimely petition, the issue now before us. Nothing suggests that it did so without finding the extraordinary circumstances required by RAP 18.8(b).

"Extraordinary Circumstances"
¶ 38 RAP 18.8 "severely restricts" this court's authority to extend the required filing time for a notice of appeal, permitting an extension "only in extraordinary circumstances and to prevent a gross miscarriage of justice." Ballard Marine argues that the commissioner's ruling should be reversed because its reliance on King County Local Rule 7(b)(4)(C) constitutes an extraordinary circumstance and denial of its opportunity to cross appeal would be a gross injustice.
¶ 39 Ballard Marine claims that its cross appeal was untimely because it did not receive notice of the entry of the order "as required by the local rule." That rule states in relevant part: "[f]or motions without oral argument, the moving party shall also provide the Court with pre-addressed stamped envelopes addressed to each party/counsel." But nothing in the rule requires the court to notify a party that an order has been entered.
¶ 40 A similar argument was rejected in Beckman ex rel. Beckman v. DSHS,[40] where the State missed the deadline for appealing a multi-million dollar judgment. The court pointed out that ". . . Plaintiffs' counsel gave the State notice of presentation of the proposed judgments. This was all Plaintiffs' counsel was required to do; the State was then obligated to monitor the actual entry of the judgments."[41]
¶ 41 Here, Bostwick filed and served his notice of appeal on December 18, 2003. Under RAP 5.2(f), Ballard Marine had 14 days after service of that notice in which to seek relief from the trial court's decision, including the sanction order. Ballard Marine failed to make any inquiry as to the status of pending orders. Its lack of diligence in monitoring entry of an order on a pending motion does not amount to "extraordinary circumstances." "This rigorous test has rarely been satisfied in reported case law."[42] In each of the cases where it has, the moving party actually filed the notice of appeal within the 30-day period but some aspect of the filing was challenged.[43] That is not the case here.
¶ 42 The commissioner correctly denied Ballard Marine's motion. Because it was untimely filed and no extraordinary circumstances *579 exist to extend the bar date, we do not reach the merits of Ballard Marine's cross appeal.
¶ 43 We affirm the summary judgment order in part, reverse in part, and remand for further proceedings. We deny the motion to revise the commissioner's ruling.
WE CONCUR: APPELWICK and BAKER, JJ.
NOTES
[1] RCW 7.72.040(1)(a).
[2] See LaPlante v. State, 85 Wash.2d 154, 158, 531 P.2d 299 (1975).
[3] Young v. Key Pharmaceuticals, Inc., 112 Wash.2d 216, 225, 770 P.2d 182 (1989).
[4] Young, 112 Wash.2d at 225, 770 P.2d 182 (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).
[5] CR 56(e) states that the response, "by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial."
[6] Young, 112 Wash.2d at 225-26, 770 P.2d 182.
[7] Del Guzzi Constr. Co. v. Global Northwest Ltd., 105 Wash.2d 878, 882, 719 P.2d 120 (1986).
[8] Folsom v. Burger King, 135 Wash.2d 658, 663, 958 P.2d 301 (1998).
[9] RCW 7.72.010(1).
[10] RCW 7.72.010.
[11] RCW 7.72.010(1), (3).
[12] Buttelo v. S.A. Woods-Yates American Machine Co., Inc., 72 Wash.App. 397, 401, 864 P.2d 948 (1993).
[13] Buttelo, 72 Wash.App. at 403, 864 P.2d 948.
[14] Buttelo, 72 Wash.App. at 404, 864 P.2d 948.
[15] Buttelo, 72 Wash.App. at 399, 864 P.2d 948.
[16] Buttelo, 72 Wash.App. at 401, 864 P.2d 948.
[17] Buttelo, 72 Wash.App. at 402-03, 864 P.2d 948.
[18] Buttelo, 72 Wash.App. at 403, 864 P.2d 948.
[19] Buttelo, 72 Wash.App. at 405, 864 P.2d 948.
[20] Buttelo, 72 Wash.App. at 405, 864 P.2d 948.
[21] Buttelo, 72 Wash.App. at 405-06, 864 P.2d 948.
[22] Buttelo, 72 Wash.App. at 406, 864 P.2d 948.
[23] (Emphasis added.)
[24] Ballard Marine obtained lease insurance, a portion of which it billed to Marine Fluid. Presumably the insurance covered the entire premises, but that is not clear from the record. Ballard Marine also secured permits (i.e. wastewater discharge). There is no indication that a permit was secured, or even required, for operation of the sandblast pot.
[25] Samuel Friedland Family Enterprises v. Amoroso, 630 So.2d 1067 (1994) (waterfront hotel rented out space specifically for the purpose of establishing a sailboat rental stand and actively marketed the rentals to guests); Fakhoury v. Magner, 25 Cal.App.3d 58, 101 Cal.Rptr. 473 (1972) (lessor of five furnished apartments in two cities with the same kind of couch purchased from the same seller).
[26] 138 Wash.2d 248, 978 P.2d 505 (1999).
[27] Hiner, 138 Wash.2d at 252, 978 P.2d 505.
[28] Hiner, 138 Wash.2d at 253, 978 P.2d 505.
[29] Hiner, 138 Wash.2d at 251, 978 P.2d 505.
[30] Hiner, 138 Wash.2d at 251, 978 P.2d 505.
[31] RCW 4.22.015.
[32] Hiner, 138 Wash.2d at 260-61, 978 P.2d 505.
[33] 72 Wash.App. 397, 864 P.2d 948 (1993).
[34] Hiner, 138 Wash.2d at 261, 978 P.2d 505 (emphasis added).
[35] 112 Wash.2d 847, 774 P.2d 1199 (1989).
[36] Hiner, 138 Wash.2d at 262, 978 P.2d 505 (emphasis added).
[37] RAP 18.8(b) applies to "a notice of appeal, a notice for discretionary review, a motion for discretionary review of a decision of the Court of Appeals, a petition for review, or a motion for reconsideration."
[38] 115 Wash.App. 540, 554, 62 P.3d 921, review denied, 149 Wash.2d 1007, 67 P.3d 1096 (2003).
[39] Glenn, 115 Wash.App. at 554, 62 P.3d 921.
[40] 102 Wash.App. 687, 11 P.3d 313 (2000).
[41] Beckman, 102 Wash.App. at 695, 11 P.3d 313.
[42] Reichelt v. Raymark Industries, Inc., 52 Wash.App. 763, 765, 764 P.2d 653 (1988).
[43] Reichelt, 52 Wash.App. at 765, 764 P.2d 653; see Weeks v. Chief of Washington State Patrol, 96 Wash.2d 893, 895-96, 639 P.2d 732 (1982) (notice timely filed, but filed in wrong court); State v. Ashbaugh, 90 Wash.2d 432, 438, 583 P.2d 1206 (1978) (notice timely filed but rejected by court for lack of filing fee); Structurals Northwest, Ltd. v. Fifth & Park Place, Inc., 33 Wash.App. 710, 714, 658 P.2d 679 (1983) (notice timely when filed within 30 days of entry of stipulated `amended' judgment).